## GERTRUDES FLORES Y SEGUIN v. SAMUEL A. MAVERICK.

The plaintiff, in order to invalidate a title which she alleges the defendant holds under a judicial sale, must show that the sale or judgment under which it was made, is void.

However erroneous the judgment may be, if it be not void, the title of a purchaser under it is valid.

That the judgment was by default upon an unliquidated demand; that there was no proof that the defendant executed the mortgage; that the mortgaged property was not described in the petition or judgment; that the petition was amended after judgment by default; that the judgment was upon a deed not executed by the defendant, a married woman, as required by law; that defendant did not understand the English language; that the citation was returned by a deputy sheriff, without naming his principal, are not grounds for declaring a judgment void.

If the judgment foreclosing a mortgage *were* void, because the property was not described, this would not affect the judgment for the debt.

Where the judgment was for the foreclosure of a mortgage and the sale of the premises described in the petition, but the mortgaged property was only described therein by reference to the deed, which was not made a part of it, and the order of sale, after reciting the judgment, directed the sale "of the mortgaged premises according to the description thereunto annexed," and annexed thereto was a copy apparently of the mortgage deed, it is sufficient to support the purchaser's title.

The fraudulent acts of the plaintiff will not affect the title of a purchaser under the judgment, who is not charged with being a party to, or with knowledge of them.

The pleadings and practice, either of courts of law or chancery, as known in the remedial jurisprudence of common law countries, are not of obligatory force here, farther than they have been introduced by our statutory provisions.

The decree in the chancery practice of England usually recites the substance of the bill, answer and facts on which it is founded, and on a bill of review the evidence cannot be looked into, to show the decree to be erroneous.

In the practice of the courts of the United States, the decree does not usually contain a statement of facts, but the pleadings, as a part of the record, may be the subject of revision by bill of review.

To maintain a bill of review for errors in law, either in the English or American chancery practice, the error must be apparent upon the face of the decree or pleadings, and the evidence at large cannot be gone into.

A reversal of the decree does not give a rehearing on the merits, but it is annulled, and the plaintiff is without remedy.

This may be convenient in the English practice, where the facts are stated in the decree, but, in our practice, it would often result in irreparable injury, if a bill of review were applicable to all cases.

If the effect of the Act of Limitations of 1841, were to introduce the bill of review, as known to the chancery practice, it was restricted by the Act of 1846, regulating proceedings in the District Court, to cases where service is had by publication only.

Though the statute of 1846 uses the term "petition for review," the remedy afforded is not restricted to a bill of review strictly, as in chancery practice, but it provides for a rehearing, or new trial, upon the merits.

And it was not intended to introduce the remedy by bill of review, for error in law apparent on the face of the decree, as known to chancery practice, but to provide a remedy in the nature of a bill of review, in cases where the defendant had not been afforded an opportunity of making his defence.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

This suit was brought by the appellant, Gertrudes Flores y Seguin, the wife of John N. Seguin, in her own name, by authority of the court, against Samuel A. Maverick, George T. Howard and Duncan C. Ogden, to try title and recover from Maverick a lot in the city of San Antonio; and to review and annul a judgment recovered against her and her husband, John N. Seguin, by the said Howard and Ogden, foreclosing a mortgage on the said lot, (which she alleged was her separate property,) which had been purchased by Maverick at a sale made under the said judgment. The said John N. Seguin was also made a party defendant, and fraud and collusion was charged between him and Howard and Ogden, in the execution of the said mortgage, upon which the judgment was rendered; but there was no prayer for relief as to him, and he made no answer to the petition.

The grounds of invalidity alleged against the said judgment by the plaintiff, in her original and different amended petitions, were in substance: that she had no notice of the suit; that the judgment was by default, upon an unliquidated demand; that the judgment was taken without proof that she had executed the mortgage; that the mortgaged property was not described in the judgment or petition; that the petition was amended after

a judgment had been taken against her by default; that the deed, upon which the judgment was rendered, was not executed by her, as was required by law to bind the separate property of a married woman; that she did not understand the English language in which the proceedings in said cause had been conducted; and that the citation had not been legally served, so as to be binding upon her.

It appeared from the copy of the proceedings in the cause, which was filed as an exhibit to her petition, that the citation to her was executed in conformity with law; but the return was made by the deputy sheriff, without giving the name of his principal.

The defendant Maverick's exceptions, and those of the defendants, Howard and Ogden, to so much of the petition as sought to review and annul the former judgment, were sustained, and as to the other matters, were overruled.

In the petition, in the suit of Howard and Ogden against the plaintiff and her husband, it was alleged, that they had, to secure the debt sued on, "made, executed, and acknowledged a formal deed of conveyance, which was intended, and understood by the parties, as a mortgage-deed, conveying certain real estate therein set forth and described, situate," &c., but there was no description of the property, or anything by which to identify it, except this reference to the deed, and that was not made a part of the petition. Judgment was rendered in favor of the plaintiff in that suit, for the amount of $3000, "and that the mortgage mentioned in the plaintiff's petition be foreclosed, and the premises therein described, be sold," &c. The order of sale, after reciting this judgment, proceeded as follows: "These are, therefore, to command you, that of the goods, chattels, and estates, so mortgaged according to the description hereunto annexed, of said John N. Seguin and Gertrudes Flores y Seguin, you cause to be made, the full amount of this execution," &c.; and upon the said order of sale was a copy of the mortgage-deed. Under this order or execution, the sheriff, without making a levy, but after having had the property duly advertised and appraised,

sold it, and the defendant, Maverick, became the purchaser of the lot in controversy in this suit.

There was a verdict and judgment for the defendants; a motion for a new trial was overruled, and the plaintiff appealed.

*Dennison & Turner*, for the appellant.—The first point to which we will direct attention is, can a bill of review be maintained upon the face of the original record of Howard and Ogden v. Seguin and wife?

1. A judgment by default may be reviewed, if there be anything in the record showing the same to be null and erroneous. (Richardson v. Ellett, 10 Texas Rep. 190.)

2. This gives rise to the question, does the record present any such errors as would have reversed the case upon a writ of error? The record discloses a proceeding under the Act of the 5th of February, 1840, (see Hart. Dig., Art. 2505,) to foreclose a mortgage. The common law was in force at the time, and the act provided a summary manner of foreclosing the mortgage, depriving parties of the ordinary delays in court, in derogation of the common law then in force; and the act, therefore, must receive a strict construction. What are the errors apparent upon the face of the record? The act referred to, provides for service of process as in ordinary cases, provided the defendant be a resident of the county. The petition of Howard and Ogden discloses the fact of the residence of John N. Seguin in Bexar county; yet the same record shows that he was cited by publication.

3. The same act provides that the petition to foreclose " *shall* describe the property mortgaged;" but the petition, and the decree rendered thereon, failed to describe any particular specified property.

4. If the instrument purporting to be a copy of the deed of John N. Seguin and wife, found among the papers of the case, but without any file-mark, and without being made an exhibit in, or attached to the original petition of Howard and Ogden, be taken as a part of the record, (which we deny,) then

we say that this deed shows upon its face, that it is void as to Mrs. Seguin, because it was not executed and acknowledged, according to the laws then in force in regard to the convey- ance of the separate property of the wife. (See Hart. Dig., Art. 173; Love & Chappell v. McIntyre, 3 Texas Rep. 10.) If this unfiled paper can be called in to aid the defective peti- tion and decree, then the record presents such. an error as would have reversed the case on appeal, writ of error, or bill of re- view.

5. Our objections thus far, have been based entirely upon the statutes then in force, and which we think clearly obtain in this case, yet, upon general principles, we say, that the decree of foreclosure, in the case of Howard and Ogden v. Seguin and wife, is inoperative for the purpose of selling or disposing of any specific property, for want of the specific description of any certain property, to be affected by such judgment; such a decree could not authorize the issuing of an order to sell any specific property, and any such order issued improvidently would confer no power upon the sheriff to sell such property.

Was the demurrer of Maverick sustained? The allegations in the petition are sufficient to hold Maverick to answer. The suit, so far as Maverick is concerned, is one of trespass to try title, connected with a prayer for equitable relief to cancel deeds, and for quieting title by removing a cloud. The allegations of title in the plaintiff to the property, and of entry and ouster by the defendant, Maverick, are sufficient, without doubt, to require the defendant to answer.

The subsequent allegations for the purpose of equitable relief, set up the pretended title of Maverick, under which he claims. This claim of pretended title terminates in the deed to him. The petition also alleges, that the said deed was made upon a sale, by virtue of a judgment, void and inoperative so far as the property sold was concerned. The petition further alleges, that the officer who sold the property to the defendant, Maver- ick, had no power or authority to sell the same, and that such sale was void.

*J. A. & George W. Paschal,* for the appellee, Maverick.

WHEELER, C. J.—The plaintiff framed her petition, seeking a recovery in two aspects. In the first, it is an action of trespass to try title, and to recover of the defendant, Maverick, the lot in question, which appears to be the principal object of the suit. In the second, it is in the nature of a bill of review, to annul a judgment formerly recovered against her, by the defendants, Howard and Ogden, and to recover damages for the injury done her by the sale of her property under the judgment.

The plaintiff alleges that the defendant, Maverick, claims title to the lot in question, through a judicial sale under the judgment which she seeks to annul; and in order to show the invalidity of her title, she makes the record of the judgment a part of her petition. The court sustained a demurrer to the petition, as to the defendant, Maverick, and dismissed him from the suit; and the first question to be decided is, whether there be error in this ruling. We are of opinion that there is not. The plaintiff having shown, that the defendant had a title by virtue of a judicial sale, founded on the judgment of a court of competent jurisdiction, it devolved on her further to show, that the judgment, or the sale under it, was void, in order to invalidate the title. This, the plaintiff has failed to do. The judgment, however erroneous, is not, on its face, void. The grounds of invalidity alleged against the judgment, which are supported by the record, are only such as might be assigned as error, for the reversal of the judgment. None of them (except the alleged want of notice of the suit, and that is contradicted by the record,) are grounds for declaring the judgment void. However erroneous the judgment may be, that is not a ground for annulling the title of the purchaser at a judicial sale under it. This title is not affected by error in the judgment. If the judgment were reversed for error, still the title of the purchaser would be upheld.

It is alleged, that the judgment decreeing a foreclosure of the mortgage, is void, because it does not describe the property mortgaged, and that the defendant had notice thereof. But the exe-

cution and act of sale, are not made a part of the petition, and were not before the court, on the hearing upon the demurrer. For aught that appeared, the sale might have been under an execution regularly issued on the money part of the judgment, independent of the mortgage. But if the writ, which was produced upon the trial, had been brought before the court upon the demurrer, we are of opinion that it was sufficient to support the title of the purchaser. (Lockridge v. Baldwin, 20 Texas Rep. 303; Castro v. Illies, 22 Id. 479; 15 Id. 354.)

It is not averred that the defendant, Maverick, participated in, or had notice of, the alleged fraudulent and wrongful acts of the plaintiffs in the judgment; and his title is therefore unaffected by them. (Sydnor v. Roberts, 13 Texas Rep. 598; Barnes v. Hardeman, 15 Id. 368.) We are of opinion, therefore, that the court did not err in sustaining the demurrer.

The remaining grounds of error assigned, have reference to the ruling of the court upon that part of the plaintiff's case, in which she sought to review and annul the former judgment, and to recover damages for the injury done the plaintiff, in its execution. The petition, in this aspect of it, combines the properties of a bill of review in chancery practice, for error in law apparent on the face of the decree; and a bill in the nature of a bill of review, impeaching the decree for fraud. In the former view, it was not sustained by the court; in the latter, it was sustained; and the question of fraud in obtaining the judgment, fairly submitted for the decision of the jury. The question presented by the judgment of the court, sustaining the demurrer to this part of the plaintiff's petition, is, whether a bill of review, as strictly and technically understood in the practice of a court of chancery, for error in law apparent upon the face of the decree, is known to our law of procedure.

Our legislation has not adopted the pleadings and practice, either of courts of law or chancery, as known in the remedial jurisprudence of England and other common law countries; and their rules of practice are not of any obligatory force, as matter of absolute principle, farther than they have been introduced or

recognised by our own statutory provisions. Where they have not received legislative affirmation, this court has been governed in their application, by considerations of their convenience and compatibility with the established law of procedure. When applicable, and in harmony with our law of procedure, they have been observed and enforced. When not in harmony with our remedial system, or inapplicable to it, and inconvenient in practice, they have not been observed. They do not constitute, necessarily, a part of our law of procedure, merely because they obtain, and are deemed of obligatory force in the courts of common law or chancery in other countries, whose jurisprudence is moulded upon the principles of the common law.

In the chancery practice in England, the decree usually recites the substance of the bill, answer, and pleadings, and also the facts on which the court founds its decree; and there the established doctrine, says Judge STORY, is, that " you cannot look into the evidence in the case, in order to show the decree to be erroneous in its statement of the facts. That is the proper office of the court upon an appeal. But taking the facts to be, as they are stated to be on the face of the decree, you must show that the court have erred in point of law. If, therefore, the decree do not contain a statement of the material facts, on which the decree proceeds, it is plain, that there can be no relief by a bill of review, but only by an appeal to some superior tribunal." (Story's Eq. Pl. § 407.)

In the chancery practice in the courts of the United States, the decrees do not usually contain a statement of the facts; and it is there held, that the pleadings are as much a part of the record, as the decree itself, and are the subject-matter of revision, by a bill of review. But in England, the pleadings cannot be referred to in support of the bill. Nothing can then be looked at, but the decree itself. And, as it contains the facts upon which it is founded, the court has only to review the decree in the matter complained of, to see if it be rightly rendered upon the facts. If it be rendered, it does not open the case to a rehearing upon new matter. " The cases of error apparent, found

in the books," (said Lord ELDON, in 17 Ves. 178,) "are of this sort; an infant not having a day to show cause," &c.   To entitle a person to bring a bill of review, it is necessary that he should have obeyed and performed the decree.   The error must appear on the face of the decree, or pleadings, both in the English and American practice, and the evidence at large, cannot be gone into.   A reversal of the decree does not produce a rehearing of the cause on the merits; but the court simply reverses the decree, if not warranted by the facts stated in the decree or the pleadings.   There is no opportunity for amendment, if the bill be so fatally defective, as not to support the decree.   The decree is reversed and annulled, and there is an end of the case.

In the English practice, where the material facts are all stated in the decree, this may be a very convenient and salutary remedy, for it does but enable the court to pronounce the proper judgment upon the facts which are before it.   It is but to deduce the true legal conclusion from the ascertained facts of the case.   But in our practice, where the facts are not stated, it would be quite inconvenient; and would often result in irreparable injury.   For example, in the present case, if the court should be of opinion, that the petition on which the former judgment was rendered, did not state facts sufficient to show the liability of this plaintiff, the decree would simply be reversed and annulled, without the plaintiff having the opportunity to amend, by stating the facts necessary to show her liability; and thus, if he had in truth a good cause of action, he would suffer irreparable injury, by the defendant in that judgment resorting to a bill of review, instead of an appeal, or writ of error; for upon a reversal upon appeal, or error, the plaintiff would have it in his power to amend, and thus cure the error of the former judgment; upon an appeal or writ of error, if the judgment is reversed, the case is open for a new trial upon the merits; and so it is upon a supplemental bill in the nature of a bill of review, in the chancery practice.   (8 Daniel, Ch. Prac. 1739, 1740.)   But it is not so upon the reversal of the decree upon a bill of review, for error in law apparent on the face of the decree.   If there be error in

the decree, it is reversed and annulled, and the plaintiff is without remedy. Such, at least, would be the effect in our practice, if this proceeding were introduced. It would, in this respect, be an anomaly in our law of procedure ; and one which we should by no means desire to see obtain prevalence. Has it been introduced by any legislative enactment ?

A bill of review, *eo nomine,* was first mentioned in the Act of Limitations of 1841, which declares, that " No writ of error or *supersedeas* shall be granted to any judgment at law, nor shall a bill of review be granted to any decree pronounced in equity, after two years from the time such judgment or decree shall have been made final." (O. & W. Dig., Art. 1346.) If this statute is to be considered as having introduced this remedy, it must be regarded as limited to decrees in equity. But it has never been considered, that the pleadings or remedies afforded by our law of procedure, were at all dependent upon, or varied by the consideration whether the case would be one of legal or equitable cognisance, in countries where the jurisdictions are distinct. To introduce such a distinction in remedies, would be to overturn all our hitherto received ideas and practice upon that subject; and would tend to the introduction of those jurisdictional distinctions respecting rights and remedies, which it has been supposed our law of procedure had rejected.

If the effect of this statute was to introduce the bill of review, as known to the chancery practice, I am of opinion that it was restricted in its application by the Act of 1846, regulating proceedings in the District Court, to the case therein provided for ; that is, where service is by publication only, and the hearing *ex parte.* (Hart. Dig., Art. 782, 783.) In that case it is provided, that the court shall make out, and incorporate in the record, a statement of the facts proved, and the defendant may, " within two years after the rendition of such judgment, file his petition of review."

This statute was passed subsequently to the act of limitations, and was a statute professedly enacted to prescribe and govern the practice in suits in the District Court, and must, I think,

be held to control the former provision, as respects the remedy, by specially providing in what case it may be employed. By requiring a statement of the facts to be incorporated in the record, it renders the remedy practicable, and obviates the inconvenience which would attend its application, in our practice, to other cases. This statute uses the terms "petition of review;" and it has not been understood to restrict the remedy it provides, to what is understood in chancery practice by a bill of review strictly, but as having been intended in the more enlarged sense of affording a rehearing, or new trial of the case, on the merits. Such was the construction put upon the statute in the leading case upon this subject of Mussina v. Moore, 13 Texas Rep. 8; and I think it might very well receive this construction, since the remedy by bill of review, was unknown in practice, and the legislature may be supposed not to have had in contemplation the technical distinctions of remedies known only to foreign systems of jurisprudence. If a bill of review proper, is known at all to our law of procedure, it is, I think, only in the cases provided by the statute, where service was by publication, and the trial *ex parte*, and not, as in the present case, where there was personal service upon the defendant.

There can never be a necessity to resort to this remedy, in order to obtain justice in our practice; for, "the rule upon a strict and proper bill of review," says Mr. Daniel, "is that the decree can be varied only upon such errors as are complained of." (3 Dan. Ch. Pr. 1732.) The remedy by writ of error, therefore, is as ample and beneficial in all respects, and it can be prosecuted within the same time, as a bill of review; besides that, it has the important advantage, that if the judgment be reversed, the whole case is re-opened for amendment of the pleadings, if necessary to the ends of justice, and a new trial upon the merits. The real merits and justice of the case may thus be finally attained; and that should be the great object of every part of the remedial system. I cannot think it was ever intended by the legislature to engraft upon our system of remedial justice, a proceeding so anomalous and wholly foreign

to its theory, and the scope and object of the established remedies for administering justice between parties litigant, as a bill of review for error apparent, as known to chancery practice in England, and the courts of the Federal Government, and those states which retain the embarrassing distinctions and complicated machinery of courts of law and chancery, in their remedial jurisprudence. It was not intended to introduce the pleadings and practice in chancery; but to provide a remedy in the nature of a bill of review, or a new trial, in cases where the defendant had not been afforded the opportunity of making his defence, for the attainment of the right and justice of the case, by a rehearing, or new trial of the case, upon its merits. We therefore conclude that the court did not err in sustaining the demurrer to the petition, in so far as it sought to annul the judgment for error in law, apparent upon the record. The view we have taken of this question, disposes of the objections urged to the instructions given by the court.

The court sustained the petition in so far as it was a petition in the nature of a bill of review, seeking to impeach the former judgment for fraud. On this point there is no complaint of the charge of the court; nor is there any cause of complaint. The question was fairly left by the court to the decision of the jury; and their verdict was well warranted by the evidence. There was no evidence supporting the allegations of fraud, to require of the jury a different finding upon that issue.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.