## STILLWELL v. STANDARD SAVINGS & LOAN ASS'N.
### No. 12327.

Court of Civil Appeals of Texas. Fort Worth.
May 10, 1930.

Rehearing Denied June 7, 1930.

A. P. Dohoney, of Paris, for appellant.

Smith & Rowland, of Fort Worth, for appellee.

BUCK, J.

Mrs. Lillian Stillwell, as guardian of the estate of R. W. Aldridge, a minor, joined pro forma by her husband, George Stillwell, filed this suit in the nature of a bill of review against the Standard Savings & Loan Association. She alleged that she and her husband and her ward resided in Lamar county, and that defendant is a corporation duly incorporated under the laws of the state of Michigan and authorized to transact business in the state of Texas, with an office in the city of Fort Worth, Tarrant county. That on July 21, 1928, judgment was rendered against her said ward in cause No. 76780, entitled Standard Savings & Loan Association v. H. I. Chennault et al., by the Sixty-Seventh district court, Tarrant county, foreclosing an alleged lien against a one-half undivided interest of said ward in a certain lot, described by metes and bounds, in the city of Paris, Tex. That said judgment recites that on September 27, 1922, said lot was jointly owned by one Winnie L. Aldridge and said minor, R. W. Aldridge, each of whom owned a one-half interest in said lot and improvements, and both of whom were living on said lot as their home; that said property was in need of repairs, and that said Winnie Aldridge, who was at that time the guardian of said minor, made application to the county court of Lamar county, Tex., in which said guardianship was pending, for an order of court authorizing and directing her as such guardian to borrow money for the purpose of improving said property and to execute a mortgage or deed of trust on the minor's half interest in said lot as security. That said application was granted and said guardian was authorized thereby to borrow $1,300 for said purpose and to secure the same by the execution of a deed of trust on the interest of said minor and the grantor in said lot.

That the loan company brought suit against H. I. Chennault, C. W. Aldridge and wife, Winnie Aldridge, in person and as guardian aforesaid, and that before the rendition of said judgment plaintiff had been appointed guardian of said minor to succeed Winnie Aldridge and she was made a party and filed an answer in said cause. That in said answer, plaintiff made a defense for said ward, on the ground that the probate court of Lamar county had no legal right or power to make or grant an order authorizing a guardian to borrow money and fix a lien on the property of her ward; and denying that plaintiff in said cause had any lien upon the interest of said minor in said lot.

Plaintiff further alleged that, by agreement of counsel therein, said cause No. 76780 was set for trial on July 20, 1928; that after said cause had been set for trial the attorneys representing plaintiff in said cause and attorneys for defendant entered into an agreement by letter and telephone conversation by the terms of which it was agreed that plaintiff in said cause might take judgment foreclosing its alleged lien on said property, and that after foreclosure sale plaintiff would purchase the same from the Standard Savings & Loan Association, provided the judgment and costs did not exceed the sum of $1,400; that by the terms of said agreement plaintiff was to execute a vendor's lien note for said sum to be paid in monthly installments; that it was then agreed and understood that plaintiff in said cause would foreclose a lien which it claimed to hold against the whole of said property, covering both the interest of Winnie Aldridge and said minor R. W. Aldridge.

Plaintiff further alleged that in making said agreement she believed that the property which was renting for $20 a month would yield a sufficient income to pay off the loan, and it was her intention to protect and preserve the property for the benefit of her said ward. That she also believed and so informed defendant's attorneys that said property was reasonably worth $1,900.

Plaintiff further alleged that at the time the order was made and entered, to wit, October 17, 1922, there was no law authorizing a probate court to make such order, and that the same was illegal and void. That the recital in the judgment and decree in said cause No. 76780, to the effect that said Winnie L. Aldridge as guardian executed a deed of trust creating a lien on the interest of said R. W. Aldridge, minor, on said lot on November 14, 1922, is a mistake; and that in fact the deed of trust referred to at said date was executed by said Winnie L. Aldridge, joined by her husband, in person, and was not and does not purport on its face to be her act as guardian; and that said instrument does not undertake to create any lien whatever on the interest of said minor in the property described. That the recital in said judgment and decree that plaintiff as guardian of the estate of said minor was present and announced ready for trial is also a mistake; that she was not present either in person or by attorney and did not announce ready for trial.

She further alleged that, notwithstanding the judgment had been rendered in the Sixty-Seventh district court against the guardian and ward for the sum of $1,397, which was approximately the amount contemplated by plaintiff's attorneys when the aforesaid agreement was entered into, after the plaintiff in

that suit had purchased said property at sheriff's sale, it demanded from this plaintiff that she pay therefor the sum of $1,613.14, which she declined to do. That defendant caused a deed to be prepared conveying said property to plaintiff reciting a consideration of $13.14 cash and an installment note for $1,600 payable in monthly installments of $20 each. Plaintiff declined to accept said deed and execute said note and make the payment as recited, for the reason that she had agreed to pay for said property not exceeding the sum of $1,400.

Plaintiff further alleged that C. W. Aldridge and his wife, Winnie L. Aldridge, and H. I. Chennault, applied to defendant for a loan of $1,300, and executed a deed of trust to secure the same on the aforesaid lot on May 25, 1922. That the proceedings in the probate court as hereinafter alleged for the purpose of undertaking to fix a lien on the interest of said minor in said lot was an afterthought and an effort on the part of defendant to fix a lien on said minor's interest for the purpose of securing a loan to said C. W. and Winnie L. Aldridge. That on November 14, 1922, said C. W. Aldridge and wife, Winnie L. Aldridge, and H. I. Chennault entered into a mechanic's lien contract with one W. H. Turner by the terms of which said W. H. Turner agreed to place certain improvements on the lot in controversy for the sum of $1,300, evidenced by the note of said Aldridge and Chennault. That on the same date said C. W. and Winnie Aldridge and H. I. Chennault executed the aforesaid deed of trust which recites that it is given as security to secure said Turner note, which, together with the mechanic's lien contract, had been transferred to defendant.

Plaintiff further alleged that she was informed and believed and here alleges the fact to be that the loan of $1,300 had been applied for on or about May 27, 1922, and that the subsequent transaction herein before alleged was had for the purpose of undertaking to validate a lien on a homestead, and the further purpose of undertaking to fix a lien on the property of her ward to secure the money promised to C. W. and Winnie L. Aldridge.

Wherefore, plaintiff prayed that the aforesaid judgment be reopened, and that upon hearing hereof the same be vacated, set aside, and held for naught in so far as it decrees a foreclosure of the alleged lien against the interest in said lot belonging to her said ward; and that the aforesaid sheriff's deed, in so far as it undertakes and purports to convey the interest of said minor in said lot, be canceled and annulled, and for general and special relief.

Defendant answered by a general demurrer and a general denial, and further pleaded that the judgment sought to be opened in said action was rendered in said court on July 21, 1928, upon due and personal service of said minor, R. W. Aldridge, and upon answer filed in said cause by his guardian, Lillian Stillwell. That the term of court at which said judgment was taken remained open until the 31st day of August, 1928; that said cause was set for July 20, 1928, and notice of such setting was given to the attorney for the said guardian and minor, namely Tom L. Beauchamp, Paris, Tex. That said cause was tried on July 21, of the same year, and said attorney for said minor and guardian consented to the amount of the judgment as rendered, which was the amount owing on said indebtedness and proved up in said cause; that on the very day on which said judgment was rendered, namely, July 21, 1928, a true and correct copy of said decree was forwarded to the said attorney of the minor and guardian and was received by him as shown by his letter to Smith & Rowland, attorneys for defendant, of July 24, 1928; that no appeal was ever taken or writ of error sued out on said judgment. That defendant admits it agreed with the attorney for the guardian and minor to sell the entire property to plaintiff as guardian for exactly the amount that this defendant has against said property plus attorney's fees and costs in the event it should become the purchaser of said property at sheriff's sale; and that this defendant has at all times been ready and willing to cary out said agreement; that this defendant denies that it ever agreed to reconvey said property for $1,400 or any other fixed amount, save and except for exactly the amount of its claim against the entire property with costs and attorney's fees added. That along about the 14th day of November, 1928, defendant, at the instance and request of said attorneys for the guardian of said minor, paid the taxes on said property for the years 1927 and 1928, amounting to $112.21, which of course increased the amount of defendant's claim against said property.

Defendant in its answer referred to its pleadings filed in said cause and now asserts that the same were and are true and correct.

Other defenses were set up not necessary here to mention.

Judgment was rendered by Hon. Bruce Young, judge of the Forty-Eighth district court, acting in place of Judge James E. Mercer of the Sixty-Seventh district court, denying the prayer of plaintiff and adjudging against her the costs of the suit. From this judgment the plaintiff has appealed.

### Opinion.

The first question for consideration is, Does plaintiff by her pleadings and by her evidence set up sufficient grounds for a bill of review. It is admitted in the statement of facts that the term of court at which the judgment was

entered remained open until August 31, 1928, and that no motion or other proceeding was taken to set aside said judgment, or to modify same during that term of court, nor until the filing of this bill of review, on, to wit, July 15, 1929. The petition of the Standard Savings & Loan Association is set out in the statement of facts, and also the contract executed by C. W. Aldridge and wife, Winnie L. Aldridge, and H. I. Chennault, with the defendant company, by the terms of which $1,300 was borrowed and secured by a deed of trust on the entire interest of said Mrs. Winnie L. Aldridge and her minor son, R. W. Aldridge. This contract provides that the grantors will keep up all buildings, fences, etc., in first-class condition, satisfactory to the party of the third part, to wit, the defendant; that he, she, or. they will pay and discharge within the time prescribed by law, or at such time as the same should be paid, all taxes of whatever nature against said premises, and, in default of any such payments within the time prescribed by law, it shall be lawful for the said party of the third part, its successors or assigns, to pay and discharge any or all of said taxes, and all moneys so expended by the said party of the third part shall be a lien on said premises. It is upon this agreement that the defendant below, and the plaintiff in the original suit, sought to charge the parties executing the deed of trust and the note as well as the minor, with the taxes paid, to wit, $112.21, shortly after the judgment was entered.

No excuse is given in the pleadings, and none was evidenced by any testimony, as to why the plaintiff here did not file her motion for rehearing in the trial court, or appeal from the judgment rendered against the guardian and her minor ward. The evidence shows that on July 10, 1928, ten days before the setting of the cause of Standard Savings & Loan Association v. H. I. Chennault et al., the attorneys Beauchamp & Lawrence wrote Smith & Rowland, of Fort Worth, the following letter:

"Gentlemen: This will confirm our agreement to the setting of the above case for July 20th.

"We have just been talking to our client, however, and it occurs to us that a settlement of this case may be effected which should be satisfactory to both sides. Mrs. Stillwell, the new guardian of the minor, is of the opinion that the one-half interest in the property is worth the balance due on the note together with taxes and insurance unless the costs run too heavy.

"If you will make us a proposition to sell her, as guardian, this one-half interest and let her take up the payments, renewing the note, I think we can get together. She will endeavor to secure another loan and pay us off, but I contemplate that she will have some difficulty in this on account of the minor child's interest being involved. I should think that your company would rather forego the collection of penalties rather than continue a law suit.

"If you look at the matter that way, figure out the balance due and which she would have to pay in order to take this off and then let us know if they would be willing to renew the note for the balance including the interest, taxes and insurance and court costs and we will be able to make this settlement, unless, as stated, costs run too high, which we presume will not.

"The property is now renting for $20.00 per month and Mrs. Stillwell will be able to make the payments. Possibly you will want a foreclosure under this judgment and an agreement to sell to Mrs. Stillwell so as to make your lien good on the entire lots. We would be willing to do whatever would accomplish that under the proper arrangement.

"Please advise me. your attitude in the matter and let us settle it before time for us to go to Ft. Worth if possible."

Smith & Rowland replied to this letter under date of July 13, 1928, as follows:

"Gentlemen: We have your letter of the 10th inst., in regard to the case of Standard Savings & Loan Association v. H. I. Chennault et al., and have given it careful consideration. The penalties you speak of in the letter are fines in the nature of interest on past due payments. They do not exceed 10 per cent. interest.

"We will be perfectly willing to sell your clients this property at precisely the amount we have against it, including attorney's fees and costs. The attorney's fees are not large because the claim is small. There will, however, have to be a foreclosure and sale in order that the entire interest can be disposed of.

"This letter will evidence your right to purchase this property from our company at exactly the amount we have against it plus attorney's fees and costs whenever we shall have bought in the property at sheriff's sale.

"Hoping that this arrangement will be satisfactory, we are

"(Signed)   Smith & Rowland."

On July 21, 1928, the day the judgment was entered, Smith & Rowland wrote Tom L. Beauchamp, attorney for defendant in the suit, the following letter:

"Judgment was rendered this morning for plaintiff in Standard Savings & Loan Association v. H. I. Chennault et al., in the 67th District Court for $1,397.45, and a copy of the decree is enclosed herewith.

"I recommend that you preserve this copy for it will assist in obtaining a new loan on the property. The Standard would much prefer that a new loan be obtained. It is

my opinion that a sale under this decree will vest a full and complete title to the property and if you have any trouble along that line, I will be glad to send you the decisions upon which this opinion is based."

On September 27, 1928, an order of sale was issued on the judgment to the sheriff of Lamar county, in accordance with said judgment and decree. Said sheriff levied upon and advertised the land described in the order and sold the same on the first Tuesday in November, 1928, in accordance with the decree and order of sale, and in compliance with law. The Standard Savings & Loan Association purchased said land at the sale, and the sheriff executed a deed to said association in November, 1928.

Upon being notified by Smith & Rowland of the execution of the deed of the association to Mrs. Stillwell for a recited consideration of $1,613.14, her attorneys, Beauchamp & Lawrence, wrote the association as follows:

"Our client, Mrs. Lillian Stillwell, has referred this matter to us; and after considerable study she is unable to see sufficient margin in the property at the price of $1613.14 as set out in your deed. At the time she entered the agreement on behalf of the minor which she represents for judgment in this case the statement showed a little more than $1300.00 and they did not anticipate it running beyond $1400. At the present time that is all she is willing to pay."

At the trial, Tom L. Beauchamp, counsel for the guardian and ward in the former suit, in 1928, testified that he was a member of the firm of Beauchamp & Lawrence, attorneys for Lillian Stillwell, guardian of R. W. Aldridge, a minor in cause No. 76780, Standard Savings & Loan Association v. H. I. Chennault et al. That after the case had been set for trial by agreement for July 20, 1928, he entered into negotiations with Mr. Leroy Smith, one of the attorneys for plaintiff in said cause, by correspondence as shown by letters in evidence, and also by telephone conversations. That the agreement was substantially as shown by the letters. That the amount of the debt sued on amounted at that time to something over $1300, and he informed Mrs. Stillwell that, if the arrangements by which she was to buy the property should be carried out it would cost her about $1,400; that neither Mrs. Stillwell nor her attorneys were actually in court when the judgment was rendered on July 21, 1928, but he had told Mr. Smith over the telephone that morning to take judgment as if they were present, that is, the attorney and the guardian. That the agreement in reference to the judgment in the case was not submitted to nor passed upon by the court. That after foreclosure and sale of the property by the sheriff, Standard Savings & Loan Association caused a deed to be prepared to Mrs. Stillwell, reciting a consideration of $1,613.14, and that Mrs. Stillwell declined to accept it on account of the amount of the consideration being more than $1,400. That he received a letter on July 22d from Mr. Smith informing him of the rendition of the judgment, together with a copy of the decree.

It is further shown in the statement of facts that Mr. Smith had charge of the case for the plaintiff and conducted negotiations leading up to the settlement as shown by the correspondence in evidence. That he informed Judge Beauchamp over the telephone of the judgment rendered, and stated the amount owing exactly as in the judgment. That Judge Beauchamp consented that the decree might be rendered for such amount. That in compliance with the request of Beauchamp & Lawrence, as shown by their letter of December 6, 1928, he caused his client to pay the taxes on the property in controversy, amounting to $112.21. That this amount and the amount of the costs added to the amount of the judgment, including interest, at the date of the execution of the deed to Mrs. Stillwell, makes the sum of $1,613.14, the consideration recited in such deed. That this was in accordance with the agreement had by the attorneys. That the agreement for judgment between Judge Beauchamp and him was not mentioned to the court, no evidence was offered in connection therewith, and the court did not pass upon the agreement, but he told the court that Judge Beauchamp had told him over the telephone to go ahead and take judgment as if he were present, and that he did so tell him. Neither Mrs. Stillwell nor her attorney were present in court at the time the case was tried and judgment rendered.

Article 4328, Rev. Civ. Statutes, 1925, provides: "Any person interested may, by a bill of review, filed in the court in which the proceedings were had, have any decision, order or judgment rendered by such court, or by the judge thereof, revised and corrected on showing error therein. But no process or action under such decision, order or judgment shall be stayed except by writ of injunction."

In the case of Jones v. Parker, 67 Tex. 76, 3 S. W. 222, 224, opinion by then Associate Justice Gaines, the Supreme Court construes the cited statute and holds that, when a party interested in an estate seeks by bill of review to revise the final or other account of a guardian or administrator, the items of account complained of must be pointed out and the errors designated and set forth in the petition. Judge Gaines in the cited case says: "Our statute applicable to the proceeding in this case is that 'any person interested may, by a bill of review, filed in the court in which the proceedings were had, have any decision, order, or judgment rendered in such court, or by the judge thereof, revised and corrected on showing error therein.' Rev. St. art. 2717. It has been held by our courts,

in several decisions upon this and similar statutes, that a bill of review, under our system, need not conform to the rules, and is not limited to the restrictions of the equitable practice as applicable to that remedy. Janson v. Jacobs, 44 Tex. 573; Seguin v. Maverick, 24 Tex. 526, 76 Am. Dec. 117."

In Janson v. Jacobs, supra, it is said, quoting from the headnotes, that: "The bill of review provided in the probate act of 1870 (Paschal's Dig., art. 5791) is not governed by the rules of chancery practice in bills of review; it applies as well to error growing out of fraud or mistake only evident from facts shown in the bill, as to error in law manifest in the record."

In Seguin v. Maverick, 24 Tex. 526, 76 Am. Dec. 117, it is said, quoting from the headnotes, that: "The pleadings and practice, either of courts of law or chancery, as known in the remedial jurisprudence of common law countries, are not of obligatory force here, farther than they have been introduced by our statutory provisions. * * * To maintain a bill of review for errors in law, either in the English or American chancery practice, the error must be apparent upon the face of the decree or pleadings, and the evidence at large cannot be gone into."

■■■ We are of the opinion, and so hold, that the ordinary rules as to diligence in making motions for new trials and in appealing from the judgment complained of do not apply in a bill of review under this statute. That the only fixed limitation of the period in which such bill may be filed is that the minor must file such bill at any time not to exceed two years after he reaches his majority. See Miller v. Miller, 21 Tex. Civ. App. 382, 53 S. W. 362, writ of error denied. But we are further of the opinion that, in order for a petitioner under a bill of review filed under this statute to obtain relief from a judgment theretofore entered, he must specifically allege and prove substantial errors by the trial court.

■■■ In the instant case, in so far as the proceedings in the trial court in cause No. 76780 were concerned, there is no evidence of any improper admission or denial of evidence, nor of any other error of law, unless it can be said that the probate court of Lamar county did not have the authority to authorize the making of a loan by Mrs. Aldridge and affixing a lien on the interest of the minor in the property in question, inasmuch as Mrs. Aldridge did not sign the application as guardian. In her petition before the probate court of Lamar county she showed that the only property of her ward consisted of one-half interest in the house and lot involved in this cause. Her prayer is that the court make due investigation of said matter and "thereupon to enter its order authorizing and empowering your peti-

tioner as guardian to procure said loan and execute said mechanic's lien and trust deed upon said ward's interest in said house and lot," etc. We think the failure of Mrs. Aldridge to sign the application as guardian of R. W. Aldridge becomes immaterial under these facts, and does not invalidate the order and action of the probate court in authorizing the loan to be made and the lien to be fixed. The minor in the instant case had a guardian appointed by the court to protect and represent his interest. She had employed an attorney to represent her and the minor, and we do not see that he failed to do so. Apparently, counsel represented his client with diligence and fidelity and we do not see that any cause for complaint as to misconduct exists. Nor was there any occasion for the appointment of a guardian ad litem to represent the minor defendant, under article 2159, Rev. Civ. Statutes, 1925. The appointment of a guardian ad litem is only necessary where there is no legal guardian or where the guardian's interest is hostile to that of the ward. We do not think there was any necessity for the agreement for judgment to be passed on by the trial court. Appellee admits that the judgment in cause No. 76780 was rendered on evidence; therefore it was not rendered on the agreement, but on evidence heard.

■■■ Article 5, § 16, of the Constitution, confers on county courts the general jurisdiction of a probate court, and authorizes such courts to transact all business appertaining to deceased persons, minors, etc., "as provided by law." Article 4164, Rev. Stat. of title 69, 1925 Civil Statutes, relates to guardian and ward and provides that: "But in the management of the estate, the guardian shall be governed by the provisions of this title."

It is urged by appellant that prior to the amendment of article 4195, in 1925, by Act of the 39th Legislature, c. 134, § 1, there was no statute in Texas authorizing the county court to make an order directing the guardian to borrow money and execute a deed of trust on the property as security. The petition filed in the probate court of Lamar county for leave to borrow money and fix a lien on the interest of the minor as well as of the guardian in the property in question was at the September term, 1922. But we believe that, irrespective of any specific statutory authority therefor, the court under the law had the authority to authorize the loan to be made in order to preserve the property of the minor and to make it tenable. Article 4172, Rev. Statutes of 1911, provides: "Should an estate in the hands of a guardian be involved in debt, and, upon proper showing made to the court, it shall appear that the guardian can pay off and discharge existing debts to the advantage of the estate by the hypothecation or mortgage of real estate at a lower rate

of interest, or upon more advantageous terms than the old indebtedness, the court may, at its discretion, by order made for that purpose, allow the guardian to pay off and discharge existing debts by the execution of a good and sufficient mortgage or deed of trust upon real estate to secure the person furnishing the money with which to discharge said indebtedness."

See Vernon's Annotated Statutes of 1914, which was the law in force at the time of said transaction.

Article 4165, Rev. St. 1925, provides: "It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits and revenues as the estate would have produced by such prudent management."

Article 4108 is to the effect that the provisions, rules, and regulations which govern estates of decedents shall apply to and govern guardianships whenever applicable and not inconsistent with the provisions of the guardianship title.

Article 3426 provides: "The executor or administrator shall take such care of the property of the estate of his testator or intestate as a prudent man would take of his own property, and if there be any buildings belonging to the estate, he shall keep the same in tenable repair, extraordinary casualties excepted, unless directed not to do so by an order of the court."

Article 4172, Rev. Statutes of 1911, which was in effect at the time of this transaction, provided that the guardian, under order of the court, could mortgage the property of the estate to pay its debts when a lower rate of interest could be had or other more advantageous terms obtained.

In the case of United States Mortgage Co. v. Sperry, 138 U. S. 313, 11 S. Ct. 321, 324, 34 L. Ed. 969, by the Supreme Court of the United States, it is shown that improvements upon valuable property in Chicago belonging to a minor and in guardianship was destroyed by fire and rendered unproductive. The guardian applied to the county court for authority to borrow upon mortgage of the real estate large sums of money to be used mainly in erecting new buildings on the property, but in part in renewing some mortgages already thereon. The county court granted the application and authorized the execution of the mortgages and notes to the United States Mortgage Company, and the money was obtained and used for the purposes stated. Default was made in the payment of interest, and, in accordance with the loan obligation, the mortgage company declared the entire principal due, and sued to foreclose in the U. S. District Court for the Northern District of Illinois. 24 F. 838; Id. 26 F. 727. The amount of the debt was $221,727.64, for which foreclosure was allowed. The question presented there was the precise question presented here, to wit, whether the county court had the power to authorize the execution of the mortgage on the minor's property for the purpose of improving the same. The Supreme Court held that such power existed and approved the foreclosure of the mortgage. There was no statute in Illinois directly authorizing the mortgage of the minor's property for improving it, but there was a statute to the effect that the guardian should have the "care and management of his estate," and that the guardian "shall manage the estate of his ward frugally and without waste," and that he may "lease the real estate," and that "he shall put and keep his ward's money at interest upon security to be approved by the court," and that he "may, by leave of the county court mortgage the real estate of the ward." Upon these statutes, and these only, the court held that the creation of the indebtedness for the improvements, and the execution of the mortgage to secure the same, were valid and proper. The court, speaking through Mr. Justice Harlan, said:

"In the court below one of the contentions of the appellee Kingsbury, who reached his majority before the final decree, and became a defendant, was that the guardian had no authority to borrow moneys for the purpose of erecting buildings to be rented, or to mortgage the minor's property to secure the payment of moneys borrowed for that or any other purpose; that no such authority could be conferred by the county court; and, consequently, that the mortgages were absolutely void. * * * The statute commits to the guardian, under the direction of the county court, the care and management of the ward's estate, and makes it his duty to manage it frugally and without waste, applying the income and profit therefrom, so far as may be necessary to the comfort and suitable support, as well as the education, of the ward. * * * It is also made his duty to put and keep the ward's money at interest. Now, it is clear that the proper management of the ward's estate involves something more than his maintenance and education. It involves the payment of taxes, and may involve the payment of assessments, insurance premiums, and mortgages, as well as the repairing of buildings; and in order that the interest of the ward may be guarded and promoted, in every emergency arising in the management of his estate, the statute empowers the guardian, with the leave of the county court, to lease, mortgage, or sell his real property. * * * It is equally clear that the debts created by the borrowing of money from the mortgage company arose out of and had connection with the proper management of the ward's estate. When the buildings upon Kingsbury's lots were destroyed by fire in 1871, the question naturally occurred whether

it was prudent or for the benefit of the ward that the lots be sold and the proceeds invested in other real estate or in securities, or whether the buildings destroyed should not be replaced, and other lots belonging to the ward improved. It was the duty of the guardian, as well as of the county court, when informed of the situation, to consider those questions, because they were involved in the management of the estate. If the guardian had not taken such action as his best judgment indicated, he would have been neglectful of his duty."

As shown by the opinion in the last-cited case, the statutes then in force in the state of Illinois were practically the same as in force in Texas at the time of making this loan. Under article 4165, Rev. Statutes, it is the duty of the guardian to take care of and manage the estate of his ward as a prudent man would manage his own property. A similar statute in Illinois was made the basis for incurring obligations to the amount of $200,000 for erecting wholly new improvements upon the ward's property. By express provisions the articles regulating estates of decedents were made to apply to guardianship matters, and article 3426 not only requires the administrator to take such care of the estate as a prudent man would take of his own property, but also to "keep all buildings belonging to the estate in tenable repair."

These statutes undoubtedly authorize the guardian under orders of the court to incur debt to repair or improve the property so as to make it tenable.

Article 16, § 37, of our Constitution, grants a lien upon the property so improved, without any further action of the guardian or probate court. We think the probate court was authorized to empower the guardian to execute the loan on the property owned in part by the ward and to extend the debt, as was actually done in this case.

In Cock, Administrator, v. Carson, 38 Tex. 284, one of two partners owning a mill died. Administrators were appointed for the dead man's estate. The mill got in condition where expensive repairs became necessary to its continued operation. The probate court placed the mill under the exclusive control of the surviving partner and made an order directing him to purchase and install in the mill two steam boilers and such other necessary machinery and apparatus as were required. A subsequent administrator repudiated the debt for the improvements. The court said: "An administrator, no more than an individual acting for himself, will be allowed to pursue such a course in the management of the trust in his hands as to do gross injustice to other parties. Our laws regulating the settlement of the estates of deceased persons will allow no such thing, much less do they require it."

In Buie's Estate v. White, 94 Mo. App. 367, 68 S. W. 101, the court said: "As a necessity growing out of this duty to make the ward's land productive, he may and should make such repairs as are reasonably necessary to keep the realty of his ward in a tenable condition. Section 3519, Rev. St. 1899, impliedly authorizes the guardian to expend money for the preservation of the ward's estate by requiring him in each annual settlement to state under oath the amounts expended for the purpose of preserving the estate of his ward. Repairs are indispensable to the preservation of real estate. If a guardian is powerless to make needed repairs, the realty of minors must go to rack and decay, and become unproductive."

We conclude that the act of the probate court in authorizing the guardian to execute this mortgage, when it appeared that it was for the advantage of the interest of the ward as well as others interested in the property, was within the powers granted to, and duties imposed on, the probate court, and that the mortgage was valid.

Since this question is the main question raised by appellant, and since the trial in the Sixty-Seventh district court shows no error, we conclude that the judgment should be affirmed, and it is so ordered.