Hemphill, C. J.
John W. Moore filed his petition in the district court, alleging in substance that on the 11th day of November, 1840, he was ruled in one hundred and forty-eight cases, before the county court of Harris county, by one D. W. C. Harris, for costs due the said Harris, as clerk of the said court; and that judgments were obtained against him in the said cases. These were averred to be erroneous on several grounds; and a writ of error was prayed, requiring them to be sent up to the district court for examination and correction. In obedience to the writ, the clerk of the county court certified transcripts of the records of two several judgments, rendered on the 11th November, 1840; one of these in favor of D. W. C. Harris and others v. John W. Moore and Benjamin E. Smith; and the other in favor of the said plaintiffs against John W. Moore and A. Larson, B. Caraher, K. Walker, Charles Bowman and George Stevens. Both judgments were for costs due the plaintiff, on cases amounting altogether in number, to one hundred and sixty-one. But no judgment was sent up embracing one hundred and forty-eight cases, or in which the judgment was against John W. Moore alone.
The writ of error was dismissed from the district court, but on what grounds does not appear from the record. In argument it is *(27) placed on the non-joinder of all the defendants in the judgment, in the application for the writ of error.
Several questions appear from the bills of exceptions to have been decided below; which, from the view we have taken of the case, it will be unnecessary to examine or determine here.
It was contended in argument that the writ of error in this case was founded upon the statute of June 25, 1841, providing “ that causes may be taken up from any inferior to a superior court, by a writ of error as well as by appeal.” This position is not well taken, as the statute was passed after the rendition of the judgments, and being prospective in its operation, its remedial processes can be applied only to future judgments or deci’ees. The common law was, however, adopted previous to obtaining the judgment, and the court having already decided that the writ was introduced as a part of that system, the party was entitled to the remedy thereby afforded, though not expressly sanctioned by any statutory enactment. But whether founded upon statute or regarded as a common law writ is immaterial to the decision of the present case.
"Whether derived from the one source or the other, the fullest scope has been given by the courts of the country to the remedial action of the writ, extending it to all judgments of inferior courts, whether the proceedings be in accordance with the common law practice, or with Spanish jurisprudence, or with the practice and principles governing courts of equity. Technical objections, springing solely from the restriction in England of this writ to courts of record, whose proceedings are in conformity with the course of the common law, will be disregarded when they impede the operation of this remedy, enlarged as it must be for its proper adaptation to our practice and system of judicature.
The question arising here is, whether, under the most liberal construction of the powers of this writ, these two separate judgments against different parties can be brought up for review by one writ, or on any one single appellate process known to our laws?
The plaintiff, in his application, does not allege that there are two judgments, but on the contrary describes one judgment as having been entered against himself in one hundred and forty-eight cases. The certified record shows two judgments — one of them against John W. Moore and B. E. Smith, and the other against the said Moore and several other persons named in the said judgment.
We are of opinion that the suing out of but one writ for two distinct judgments was a fatal defect, and on that ground the judgment of the court below, in the dismissal of the case, must be affirmed. *(28) Had there been but one judgment, the refusal of the judge below to issue a summons and severance would, under our liberal practice and under the circumstances of this case, have ■ been regarded as error. There is nothing in the record from which we can presume that any of the defendants to these judgments, except John W. Moore himself, had any knowledge of the action of the county court, and in a proper case they should have had the privelege of joining in the application for a remedy, if the same were compatible with their views or interests.
The opinion of this court in the affirmance of the judgment is expressed with reluctance, as an inspection of the record shows abundant grounds for reversal of the action of the county court, and for a perpetual prohibition of further proceedings on the executions issued thereon. All original jurisdiction in the county court for the recovery of money had ceased nearly two years previous to the trial in this case.
The sixth section of the act approved December 20,1836, conferring on the county courts original jurisdiction of all suits and actions for the recovery of money, was repealed by the first section of the act approved January 26, 1839; and the 18th section of the former act, giving the said courts power to hear and determine all motions against sheriffs or other officers, etc., was impliedly repealed by the second section of the latter act, taking away all power and jurisdiction from the county courts not enumerated and defined in the said act. None of these enumerated powers could, by implication, authorize the cognizance of the cases in which judgments have been givem; and the action of the court in the exercise of jurisdiction not conferred by law is void and a mere nullity.
The case not being properly before us, we have no authority to avoid these judgments, though their nullity be so apparent, or to issue any order restraining further proceedings thereon.
It is ordered, adjudged and decreed that the judgment of the court below be affirmed.