958

**ROSS et al. v. SEIP et al.**
**No. 5795.**

Court of Civil Appeals of Texas. Texarkana.
Sept. 23, 1941.

Rehearing Denied Oct. 9, 1941.

B. F. Whitworth, of Linden, Sam J. Dotson, of Longview, and W. N. Harkness, of Texarkana, for appellants.

C. E. Bryson, R. K. Batten, and P. F. Graves, all of Houston, Jones & Jones, C. A. Brian, Lane & Lane, and R. M. Nichols, all of Marshall, James F. Gray, of Dallas, Saye & Saye, of Longview, Sam Williams, of Mt. Pleasant, Don Emery and R. L. Foster, both of Bartlesville, Okl., and Wheeler, Atchley & Vance, of Texarkana, for appellees.

HALL, Justice.

On April 26, 1928, Phillip Ross was appointed and qualified as community administrator of the estate of himself and his deceased wife, Lizzie Ross, and on the same day acting as such administrator he executed and delivered to J. F. Rochelle a deed of trust covering the land here in controversy to secure the payment of five promissory notes, each for the sum of $300, due 1, 2, 3, 4 and 5 years after date and payable to Spivey and Williams, his attorneys, as consideration for legal services to be performed by them for Phillip Ross with respect to certain lands, in Cass

County, not included here, claimed by said Ross. Note No. 5 on May 31, 1928, and the other four notes in the fall of 1931, were transferred and delivered by W. T. Williams of the firm of Spivey and Williams, to A. T. Farr. On August 3, 1932, after the death of Phillip Ross in 1930, Farr as owner of said notes and the lien securing same, by an instrument in writing in which it is recited that J. F. Rochelle, after request made, refused to act as trustee in executing said trust, and after the notes secured by same were long past due and unpaid, appointed L. O. Meadows as substitute trustee in the place of Rochelle. Meadows posted notices of sale in the manner required by the deed of trust, and on September 6, 1932, sold the land here in controversy, 220 acres, to A. T. Farr for a recited cash consideration of $1250, and on the same day executed and delivered to said Farr a deed conveying to him said land. On March 20, 1934, Farr instituted suit in the District Court of Cass County, hereafter referred to as the "first suit", against all the heirs of Phillip and Lizzie Ross, appellants, here, for the title and possession of the land theretofore conveyed to him by substitute trustee Meadows at the sale of said property under the Spivey and Williams deed of trust.

While that suit was pending in May, 1935, Fred H. Ryan, an appellee here, purchased from A. T. Farr an oil and mineral lease covering 170 acres of the land in controversy for himself, and one-half the minerals thereunder for himself and one W. A. Haynes. On August 13, 1935, Farr executed and delivered to the law firm of King, Mahaffey, Wheeler and Bryson, his attorneys in the first suit, a deed to 50 acres of the land in controversy. On September 7, 1935, the Ross heirs executed and delivered to Jones and Jones, attorneys, Marshall, Texas, a power of attorney to represent them in the first suit. This power of attorney was revoked before the first suit went to judgment. On September 16, 1935, the Ross heirs executed a power of attorney to John Ross, their brother, giving him authority to compromise with the adverse claimants to the lands involved in the first suit and here involved, and execute conveyances carrying out said settlement agreement. Under this power of attorney a settlement of the first suit was effected with appellees, Ryan, the law firm of King, Mahaffey, Wheeler and Bryson, and other parties not necessary to

mention here, under which Ryan and King, Mahaffey, Wheeler and Bryson were to retain all the minerals under the east 110 acres and convey all other interest held by them to appellants. And appellants agreed to quitclaim to appellees named above the 110 acres of minerals in the proportion which they might designate. In this settlement appellants were represented by their agent and brother, John Ross, John M. Seip and Franklin Jones, their attorney. On October 22, 1935, appellants executed and delivered to appellees deeds carrying out their agreement. On October 25, 1935, the Ross heirs, appellants here, executed a mineral deed to John M. Seip and their brothers George W. Ross and John Ross, conveying all the minerals in all the land claimed by them in Cass County. On November 9, 1935, King, Mahaffey, Wheeler and Bryson executed a deed to John M. Seip, George W. Ross and John Ross, conveying all the surface of the 50 acres theretofore held by them and all the minerals under 25 acres described in said deed, and on the 13th of November, 1935, Fred H. Ryan executed a deed to George W. Ross, John Ross and John M. Seip, conveying to them all interest held by him, except the minerals in and under 85 acres. On November 18, 1935, John M. Seip, George W. Ross and John Ross executed a mineral deed to S. P. Jones and Franklin Jones conveying to them the minerals under 10 acres specifically described in said deed. On January 26, 1936, George W. Ross and John Ross executed a mineral deed to John M. Seip conveying to him an undivided two-thirds mineral interest in all the land owned by them, including the land here in controversy. Thus was placed in Seip the entire mineral interest owned and claimed by the Ross heirs. On March 16, 1936, judgment was entered in the first suit disposing of this property among the parties thereto in accordance with their settlement agreement. On April 22, 1936, and September 3, 1936, appellants instituted two suits, later consolidated, in the District Court of Cass County having for their purpose the cancellation of the deed of trust executed by Phillip Ross to secure the notes payable to Spivey and Williams; the trustee's deed under said deed of trust executed by L. O. Meadows as substitute trustee, conveying the land to A. T. Farr; the oil and gas lease to John M. Seip executed by John Ross as attorney in fact for appellants; the power of attorney from appel-

lants to John Ross under which the settlement hereinbefore referred to was effected; the four mineral deeds executed by appellants on October 25, 1935, one to A. T. Farr, one to Fred H. Ryan, one to the law firm of King, Mahaffey, Wheeler and Bryson, and one to John Ross, George W. Ross and John M. Seip; the deed from John Ross and George W. Ross conveying two-thirds undivided interest in the minerals to John M. Seip; the assignment of oil and gas lease by John M. Seip to Walter R. Smith; the mineral deed from John M. Seip to A. L. Burford; and the judgment in the case of A. T. Farr v. Mattie Ross Sheppard et al. (first suit) dated March 16, 1936. These instruments, it was alleged, constituted a cloud on appellants' title to five-sevenths of the 220 acres of land in controversy. Appellees answered with general denial, plea of not guilty, and alleged that they were innocent purchasers.

At the conclusion of the testimony the court peremptorily instructed the jury in favor of appellees. Issues were submitted to the jury with reference to the fraud and collusion of Farr, Seip, John Ross, and Nick Barbare. The jury answered these issues in favor of appellants, and upon said answers judgment was entered for appellants against Farr, Seip and others not necessary to mention, and no further notice will be taken of this phase of the case. This appeal is from the judgment entered for appellees upon the verdict of the jury based upon the peremptory instruction.

It is a contention of appellants that the mineral deeds executed by them to appellees were ineffective because of the fraud and collusion of appellees in connection with the alleged wrongful acts of John Ross and John M. Seip in procuring the signatures of appellants thereto. And because the settlement agreement, whereby appellants were to execute mineral deeds to appellees, and appellees were to execute deeds to the surface and part of the minerals to appellants, was not carried out by appellees for the reason that they made their conveyances to John Ross, George W. Ross and John M. Seip and not to appellants. It is further contended by appellants that the judgment entered in the first suit was unauthorized in that the contract of settlement provided that the first suit should be dismissed.

As said in the statement of the case, appellants constituted their brother John Ross their agent with full power to settle, compromise, and adjust their rights with appellees insofar as the land here in controversy is concerned. The record reflects that the brothers and sisters of John Ross reposed great faith in him and one John M. Seip. The record is replete with statements by appellants that their brother John Ross, and John M. Seip were their agents in dealing for this land. There are numerous allegations of this fact in appellants' 7th amended petition upon which they went to trial. Appellants also charged fraud and collusion against appellees in consummating this settlement agreement. But the record is devoid of any evidence establishing such fact. Appellees dealt with appellants' agents, John Ross and John M. Seip, as strangers and at arm's length. It is true that appellees' attorneys prepared the deeds effecting the settlement which were executed by appellants. Yet there is no hint that appellees constituted Ross and Seip their agents when they, Ross and Seip, took the deeds and secured appellants' signatures thereto. While the record unmistakably reflects that Seip and Ross shamefully defrauded the other Ross heirs, in their dealings with their property after the settlement and compromise with appellees, there is no evidence that appellees had knowledge of or were responsible for any fraud and collusion, if any, of said agents in connection with the execution by appellants of the mineral deeds. It is nowhere shown that appellees participated in or knew of any fraud which Ross and Seip practiced upon appellants. Neither is there any evidence in the record showing that appellees had notice of any breach of trust by Ross and Seip or of any fact or circumstance which would have provoked inquiry of an ordinary person. Without such showing no fact issue was raised with respect to the regularity of the settlement agreement. Courts favor compromises and settlements of disputes as being in the interest of the public. 15 C.J.S., Compromise and Settlement, p. 738, § 23, and the numerous cases cited in the notes. And "while a court of equity has power to set aside a compromise agreement, such agreement cannot be repudiated by either party or set aside in the absence of fraud or other circumstances affecting its validity. * * " 15 C.J.S., Compromise and Settlement, § 30, p. 749. If appellants' agents, Ross and Seip, defrauded them in the execution of the mineral deeds carrying into effect the

settlement agreement, the appellees would not be chargeable with such fraud and collusion unless in some way they had been parties to it. "A person cannot be held liable for a fraudulent misrepresentation unless he made it himself or authorized another to make it for him or in some way participated therein * * *." 27 C.J. p. 7, Sec. 120; West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090; Hayward Lbr. Co. v. Cox, Tex.Civ. App., 104 S.W. 403, writ refused; Reeves v. McCracken, 103 Tex. 416, 128 S.W. 895.

■■ Also we think it is clear that the consideration for these several deeds effecting a settlement of the first suit was sufficient. Citizens' Garage Co. v. Wilson, Tex.Civ.App., 252 S.W. 186; Sutton v. Schoellkopf, Tex.Civ.App., 62 S.W.2d 318, writ refused. The settlement agreement between appellants and appellees provided that appellants should quitclaim certain mineral interests to appellees and that appellees should convey certain surface and mineral interests to appellants *or their assignees*. Appellees did not make their conveyances to appellants. But the records show that at the time appellees executed their deeds carrying out the settlement agreement appellants had already assigned their mineral interests in the land in controversy to their brothers, John and George W. Ross, and John M. Seip. In such circumstances, we think it was entirely proper for appellees to take the short cut and make the deeds directly to John Ross, George W. Ross and John M. Seip, *appellants' assignees of their mineral interests* rather than to the appellants. Especially is this true when the contract of settlement expressly so provides. At least this was a substantial and reasonable compliance with the settlement agreement. (Italics ours.)

■ We do not think the judgment in the first suit was subject to the criticism that it was entered when neither they nor their counsel were present. The party holding appellants' title to the minerals, John M. Seip, was present and participated in the entry of the judgment. The record reflects that John M. Seip requested the Honorable A. L. Burford to examine the judgment and see that it was in proper form. Moreover, the judgment in the first suit did nothing more or less than dispose of the property in the same manner as the settlement agreement theretofore consummated by the exchange of deeds between the parties. The conclusions expressed above render unnecessary a discussion of the other propositions brought forward.

The judgment is affirmed.

WILLIAMS, J., disqualified and not sitting.