**FIRST DALLAS PETROLEUM, INC.,
Charles Madison and Robert
Barry, Appellants,**

v.

**George W. HAWKINS, Sr., George W.
Hawkins, Jr., and T. Eugene
Scott, Appellees.**

No. 05–86–00232–CV.

Court of Appeals of Texas,
Dallas.

Feb. 25, 1987.

Rehearing Denied March 20, 1987.

See also, 715 S.W.2d 168.

Bertran T. Bader, III, Dallas, for appellants.

Thomas A. Melody, Dallas, for appellees.

Before DEVANY, McCLUNG and STEWART, JJ.

DEVANY, Justice.

This appeal comes to us on a writ of error involving a default judgment on an action for fraud. George W. Hawkins, Sr., George W. Hawkins, Jr., and T. Eugene Scott sued First Dallas Petroleum, Inc., and Charles Madison and Robert Barry, individually, claiming fraud in the sale of certain oil and gas interests. All three defendants filed a pro se joint answer. The trial court ordered both plaintiffs and defendants to resolve all discovery and other pre-trial matters by July 26, 1985, and warned the parties that failure to comply might, without further notice, result in the dismissal of all claims, striking of pleadings, and rendition of default judgment. Trial was had before the court on September 23, 1985, with the plaintiffs present, but without the defendants being present. The court proceeded to hear the plaintiffs' evidence to establish liability and damages. At the conclusion of the testimony presented by the plaintiffs, in response to a question by plaintiffs' counsel, the court announced that it had struck the defendants' pleadings. Then it rendered a default judgment against the defendants.

Barry, Madison, and First Dallas Petroleum, Inc., appeal on this petition for writ of error. They present twenty-one points of error; however, we will address their fifth point of error, and those related to it, to dispose of this writ of error appeal. In their fifth point of error, Barry, Madison and First Dallas complain that the trial court abused its discretion in striking their answer. We agree and for the reasons stated below, we reverse and remand for a new trial.

■ In order to have a successful appeal on a writ of error, the action must be (1) brought within six months of the trial court judgment; (2) by a party to the suit; (3) who did not participate in the trial; and (4) there must be error apparent from the face of the record. *Brown v. McLennan County Children's Protective Services*, 627 S.W.2d 390, 392 (Tex.1982); *Morales v. Dalworth Oil Co.*, 698 S.W.2d 772, 774 (Tex.App.—Fort Worth 1985, writ ref'd n.r.

e.); *Caruso v. Krieger,* 698 S.W.2d 760, 761 (Tex.App.—Austin 1985, no writ).

▮ Barry, Madison and First Dallas were unquestionably parties to the suit, and brought the appeal within the required six months. The plaintiffs claim that because Barry, Madison and First Dallas filed an answer in the trial court they "participated at trial." We disagree. Mere filing of an answer, or making a motion for a new trial, does not cause a defendant to "participate at trial" and thereby preclude his appeal by writ of error. *Davis v. Hughes Drilling Company,* 667 S.W.2d 183, at 183–84 (Tex.App.—Texarkana 1983, no writ). Therefore, Barry, Madison, and First Dallas have established their right to bring this appeal by writ of error. The questions remaining concern whether there is error apparent "on the face of the record." Texas cases leave some confusion as to what "the face of the record" means. Our research has revealed that the phrase "face of the record" simply means "the entire record of a case in court up to the point at which reference is made to it," as is summarized in BALLANTINE'S LAW DICTIONARY 448 (3d ed. 1969). Thus, on review by writ of error as well as by appeal, in order to test the validity of the judgment, the appellate court may review "all of the papers on file in the case including the statement of facts." *Morales,* 698 S.W.2d at 774.

However, the expression "face of the record" seems to indicate that there may be a part of an appellate record other than its "face" that may be available to the appellate court in an ordinary appeal, but not on writ of error. Because of this apparent contradiction, we have done extensive research in order to determine the source of the expression "face of the record" and to determine whether there is another part of the record, other than its face, which we may not review upon an appeal by writ of error. None of the cases we have reviewed actually so holds, and several cases recognize that a statement of facts may be a proper part of the record on writ of error. *Stubbs v. Stubbs,* 685 S.W.2d 643, 645–46 (Tex.1985); *Brown,* 627 S.W.2d at 394; *Morales,* 698 S.W.2d at 774. These decisions are consistent with the line of decisions holding that writ of error affords review of the same scope as an appeal when the other requirements of a writ of error have been met. *Gunn v. Cavanaugh,* 391 S.W.2d 723, 724 (Tex.1965); *Ward v. Scarborough,* 236 S.W. 441, 444 (Tex.Comm'n App.1922, judgmt adopted); *Behar v. Patrick,* 680 S.W.2d 36, 38 (Tex. App.—Amarillo 1984, no writ). This holding concerning the scope of writ-of-error review has been followed since the beginnings of Texas jurisprudence. *Luckett v. Townsend,* 3 Tex. 119, 128 (1848); *Cheek v. Rogers,* 1 Tex. 440, 441 (1846); *Moore v. Harris,* 1 Tex. 36, 40 (1846). In 1846, Chief Justice Hemphill pointed out that, although in England appeal was the mode of review in courts of chancery and writ of error was the mode of review in the common-law courts, the differences between these two modes were not applicable under the blended Texas procedure. *Moore,* 1 Tex. at 40.

Further confusion arises from the use of the expression "face of the record" in a more limited sense in other contexts. Thus in *Appraisal Review Board v. International Church of the Foursquare Gospel,* 719 S.W.2d 160, 30 Tex.Sup.Ct.J. 29, 30 (Tex.1986), the supreme court took notice of a fundamental "jurisdictional error of the trial court ... apparent on the face of the record," though no brief was filed in the court of appeals. In this context, it has been held that there is no fundamental error "apparent on the face of the record" if its existence is disclosed only by an examination of the evidence. *Houston Oil Co. v. Kimball,* 103 Tex. 94, 122 S.W. 533, 537 (1909); *Heard v. Nichols,* 239 S.W. 805, 807 (Tex.Comm'n App.1927, judgmt adopted). Also, in *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965), the supreme court held that jurisdiction of the court over a nonresident "must affirmatively appear on the face of the record." We have interpreted this expression in *McKanna* in the more limited sense, as distinguished from the complete record, which includes the evidence. *Gourmet, Inc. v. Hurley,* 552 S.W.2d 509, 512 (Tex.Civ.App.—Dallas 1977, no writ).

How "error apparent from the face of the record" came to be considered an element of review by writ of error, though not in the restricted sense used in these other contexts, is uncertain. In *Sequin v. Maverick*, 24 Tex. 526, 533–35 (1859), the supreme court explained that in the English chancery practice, the decree recited the pleadings and the facts, and a bill of review was available if the facts, as stated "on the face of the decree" showed that the court had erred in a point of law. Thus, "[t]he error must appear on the face of the decree, or pleadings, ... and the evidence at large, cannot be gone into." 24 Tex. at 534. The *Sequin* opinion points out, however, that this practice cannot properly be applied in Texas where judgments do not ordinarily recite the facts on which they are based, and that the remedy for such an error is by appeal or writ of error, in which a new trial can be granted if necessary. Accordingly, the court held that a "bill of review" in the Texas practice does not lie for "error apparent" as known in chancery practice, but only for cases where the defendant has not been afforded the opportunity of making his defense, as in the cases of fraud, or if the trial was *ex parte* after service by publication. 24 Tex. 536–37.

Following this reasoning, a long line of Texas cases has held that a bill of review is not available to correct an error "apparent upon the face of the record" because the proper remedy is appeal or writ of error. *Schleuning v. Duffy*, 37 Tex. 527, 528 (1872); *Milam County v. Robertson*, 47 Tex. 222, 232 (1877); *Talbert v. Barbour*, 40 S.W. 187, 188 (Tex.Civ.App.1897, no writ); *American Standard Life Ins. Co. v. Denwitty*, 256 S.W.2d 864, 869 (Tex.Civ. App.—Dallas 1953), writ dism'd).

Of course, the reasoning in these cases would indicate that a bill of review should not be available to correct an error reviewable on appeal or writ of error, including one disclosed by a statement of facts, if available. However, until recently, a statement of facts was rarely available on writ of error, particularly if the defendant was not present at the trial, and, if no statement of facts was available, a bill of review was allowed. *De Garcia v. San Antonio*

& *A.P.Ry.Co.*, 77 S.W. 275, 277–78 (Tex. Civ.App.—1903, writ ref'd); *see Pearl Assurance Co. v. Williams*, 167 S.W.2d 808, 812 (Tex.Civ.App.—Fort Worth 1942, no writ) (if the "record" would not disclose the error complained of in the bill, an appeal or writ of error would not be available).

The first instance we have found in which an "error apparent on the face of the record" has been considered as an *element* of review by writ of error, rather than an error for which a writ of error, as distinguished from a bill of review, is the proper remedy, is *Texaco, Inc. v. McEwen*, 356 S.W.2d 809, 811 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). It is notable that the cases cited in *Texaco* in support of this rule include some of the bill-of-review cases noted above. In *Texaco* the return on the citation showed that the service was insufficient, and the court held this to be an "error on the face of the record." Thus, the decision cannot be understood as a limitation of the scope of review in writ of error as compared to an ordinary appeal.

This history demonstrates that review on writ of error has never been more limited in scope than on an ordinary appeal, and that "error apparent on the face of the record" means nothing more in this context than an "error shown by the record," which is the same for any appellate review. However, since "error apparent on the face of the record" is misleading and seems to have a different meaning in other contexts, we do not use it in defining the scope of our review in this case.

 The petition for writ of error, as it is known today, found its way into the Texas civil statutes under former article 2255, TEX.REV.CIV.STAT. (1925) and eventually became our present Rule 45 of the Rules of Appellate Procedure. The purpose of the review by the appellate court is not to disturb the findings of fact by the trial court but instead to examine possible errors in the trial proceedings. *See Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 557 (Tex.App.—San Antonio, writ ref'd n.r.e.). A writ of error, where available, affords review of the trial pro-

ceedings of the same scope as an ordinary appeal. *White v. Douglas,* 569 S.W.2d 635, 637 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). It brings the entire case before the appellate court for review of all rulings by the trial court that are properly assigned as error. *Id.* "Writ of error affords a review of the same scope as an appeal." *Gunn v. Cavanaugh,* 391 S.W.2d 723, 724 (Tex.1965); *Behar v. Patrick,* 680 S.W.2d 36, 38 (Tex.App.—Amarillo 1984, no writ). The usual presumptions that a judgment is valid are not indulged in when reviewing a writ of error proceeding. *Wilson v. Industrial Leasing Corp.,* 689 S.W.2d 496, 497 (Tex.App.—Houston [1st Dist.] 1985, no writ).

■ However, since an appellant in a petition for writ of error has not participated at trial, the usual petition will involve a default judgment. A default judgment proceeding occurs where no answer has been filed. Failure to file an answer operates as an admission of the material facts alleged in a plaintiff's petition, except as to unliquidated damages. *Village Square,* 660 S.W.2d at 559. Thus, the defendant against whom a default judgment is rendered is precluded from raising certain issues on appeal. Therefore, in a review of a default judgment, we may not examine the sufficiency of the evidence to support liability, although we may examine the sufficiency of the evidence to support a judgment for damages based on an unliquidated claim. *See First National Bank of Irving v. Shockley,* 663 S.W.2d 685, 688 (Tex.App.—Corpus Christi 1983, no writ). However, even where a defendant fails to file an answer, if no liability exists against him as a matter of law on the facts alleged in the petition, then the fact that he has defaulted by failing to file an answer cannot create liability. *Morales v. Dalworth,* 698 S.W.2d 772, 775 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). *See United States Fidelity & Guaranty Company v. Cascio,* 723 S.W.2d 209 (Tex.App.—Dallas, 1986, no writ). The rule that defects in pleadings are waived when written exceptions are not made "shall not apply as to any party against whom default judgment is rendered." TEX.R.CIV.P. 90. In that situa-

tion, whether the review of a default judgment is by appeal or by "writ of error," we may examine the pleadings in order to determine whether they sufficiently plead a cause of action on which to support the judgment. *Caruso v. Krieger,* 698 S.W.2d 760, 762 (Tex.App.—Austin 1985, no writ). *See also Stoner v. Thompson,* 578 S.W.2d 679, 684 (Tex.1979).

■ Our next question becomes: what other kinds of errors may an appellate court review on an appeal by writ of error? The general rule is that, in a normal appeal, as well as an appeal by writ of error, an appellant is required to preserve his error at the trial court, or he will be precluded from raising it on appeal. *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982); *Tankard-Smith, Inc., General Contractors v. Thursby,* 663 S.W.2d 473, 477 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

In *Tankard-Smith,* the court considered whether an appellant in a writ-of-error case is required to preserve error in order to raise it on appeal. Pursuant to the following discussion, the court held that where a proper predicate is required for appellate review, an appellant who does not meet that predicate is foreclosed from raising that issue on appeal. The court cited a number of writ-of-error cases and then stated:

In each of these cases the various courts held that any error properly assigned was available for review by writ of error. However, the problem in an appeal by writ of error is for the appellant to be able to "properly assign" error. This is so because appellant, or the plaintiff in error, did not appear at trial and the record would seldom, if ever, contain an objection during the trial to form the basis for appellate review. This of course was not the problem when fundamental error was available. However, now that "fundamental error in civil cases survives today only in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely af-

fected as that interest is declared in the statutes or the Constitution of Texas," *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982), appellate review by writ of error is extremely limited. To permit the appellant in an appeal by writ of error to raise for the first time on appeal issues which the appellant in the normal appeal cannot raise would be rewarding the defendant for not appearing and participating, for whatever reason, in the trial proceedings.

663 S.W.2d at 477.

We do not necessarily agree with the implication of the *Tankard-Smith* language concerning "proper assignment of error." "Assignment of error" is defined as "[a] specification of the alleged errors committed by the lower court and designated by the party complaining of them as grounds for reversal." BALLANTINE'S LAW DICTIONARY 101 (3d ed. 1969). This definition does not indicate that properly assigned error means error objected to or otherwise preserved at trial.

However, not withstanding the *Tankard-Smith* court's reasoning, former Rule 373 of the Texas Rules of Civil Procedure, which was applicable at the time of trial, did not require an appellant to preserve error by objection at trial when he had no opportunity to do so. Rule 373 provided as follows:

> Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, *if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.* (Emphasis added.)

Tex.R.Civ.P. 373 (Vernon 1985) (Rule 373 was repealed effective September 1, 1986; the same subject matter is now covered by Rule 52 of the Texas Rules of Appellate Procedure). Obviously, since an appeal by writ of error requires that the appellant not have participated at trial, the appellant could not have had any opportunity to object. To hold that such a person must object when he had no opportunity to do so would ignore the plain language of Rule 373. Thus, when an appellant has no opportunity to preserve his error at the time it is committed, he is not foreclosed from raising it on appeal. Tex.R.Civ.P. 373 (Vernon 1985) (repealed effective Sept. 1, 1986); *Holland v. Fidelity & Deposit Company of Maryland*, 623 S.W.2d 469, 471 (Tex. App.—Corpus Christi 1981, no writ). The argument that an appellate court on an appeal by writ of error may only review error objected to in the trial court would destroy a remedy designed to protect defendants who have been wronged in proceedings where for reasons beyond the scope of the trial they were not present. Furthermore, it would vitiate the remedy of review by writ of error.

Our next question is whether appellants Barry, Madison, and First Dallas were required to preserve their error by including it within a motion for new trial. The record in this case contains a "Motion to Vacate Judgment" filed thirty days after the final judgment. This motion, which was overruled by the trial court on November 1, 1985, did not complain about the striking of the defendants' pleadings, but did complain that "they had previously filed an Answer and Affirmative Defenses to the cause." Additionally, they stated grounds for not being present which are not germane to our discussion. However, Rule 324 of the Texas Rules of Civil Procedure, applicable both at the time of trial in this case and at present, does not require a motion for new trial to preserve the type of error of which Barry, Madison, and First Dallas complain. *See* TEX.R.CIV.P. 324(b).

■■■ We are persuaded that under former Rule 373 properly assigned error that appears in the record may be reviewed by writ of error without objection in the trial court. *See Behar v. Patrick*, 680 S.W.2d 36, at 38–39 (appeal by writ of error is not limited to a search for fundamental error). Of course, the appellant by writ of error is

still required to preserve certain kinds of error by a motion for new trial under Rule 324(b), and we do not hold otherwise. Also, as previously stated, we recognize that we may not review sufficiency-of-the-evidence questions concerning *liability* usually precluded in no-answer default judgment appeals. *Village Square*, 660 S.W.2d at 557.

■ However, we express no opinion as to whether an appellant on an appeal by writ of error is required to preserve error by objection in the trial court under Rule 373's successor, Rule 52 of the Texas Rules of Appellate Procedure. Rule 52 does not contain the language, "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him." Tex.R.Civ.P. 373 (Vernon 1985) (repealed effective Sept. 1, 1986). As we stated earlier, to require an appellant in a writ of error to object at trial or waive his error is to leave him on the horns of a dilemma; it is impossible to not participate at trial and still preserve error by trial objection. A narrow interpretation of Rule 52 may require this; however, these are questions for later courts to decide. We simply hold that, under former Rule 373, which was applicable at the time of trial, Barry, Madison, and First Dallas did not have an opportunity to object at the time the ruling striking their pleadings was made; therefore, they are not precluded from raising it on appeal.

Since we have held that under former Rule 373 Barry, Madison, and First Dallas were not required to preserve this error, we now address their fifth point of error. In this point, Barry, Madison, and First Dallas point to the record to show that the trial court abused its discretion when it struck their pleadings without notice and hearing. It is apparent from the record that the trial judge struck the pleadings of Barry, Madison, and First Dallas without sufficient notice and without a hearing. Rule 215(2)(b)(5) of the Texas Rules of Civil Procedure provides that, if a party fails to comply with a pretrial order, the court may, *after notice and hearing,* make an order striking out the pleadings of the errant party, or render a default judgment against him. TEX.R.CIV.P. 215(2)(b)(5).

■ It may be argued that the trial court's action in striking the pleadings was justified in light of defendants' failure to comply with the court's "Order to Aid in Resolution of the Case." Therefore, we have carefully examined that document and the attendant circumstances. That order was issued by the court on April 23, 1985, and its pertinent provisions required both plaintiffs and defendants to complete various pretrial matters and to file a "pretrial order" by July 26. Thus the order was of a general nature and not directed solely to one side or the other. The precise warning in that April 23rd "Order to Aid in Resolution of Case" stated:

> Failure to file the pretrial order in the form and on the date required may, without further notice, result in the prompt dismissal of all claims, striking out of pleadings, rendition of default judgment, and restrictions on evidence admitted at trial.

We hold that the trial court may not disregard the *"notice and hearing"* requirement of Rule 215(2) in this manner. We note that the record reveals that the plaintiffs filed a motion to strike the answer of the corporation, First Dallas, on September 19, just four days before the trial. However, that motion did not address the individual answers filed by Barry and Madison. Furthermore, even that motion to strike the corporation's answer never resulted in a signed order by the trial judge. It is apparent from the record that no hearing was held for Barry, Madison, or First Dallas before the announcement from the bench that their pleadings were struck. The statement of facts provides us with the first clue that the defendants' pleadings were struck. For the first time, at the end of the trial, after the plaintiffs had presented their evidence, the following exchange took place between the plaintiffs' attorney and the court:

> MR. MELODY: Question, whether the pleadings were struck and whether I

should make a separate order, or whether this order is proper. I have—

THE COURT: Yes, the pleadings are struck.

MR. MELODY: All right.

THE COURT: Yes. The case has regularly been called for trial and *the defendant has* failed to appear although duly notified of the trial setting and the pleadings are struck and the defendant is in default. (Emphasis added.)

 This sanction, recited in the record without any basis as to when it was imposed or to which defendant it is addressed, is in violation of Rule 215(2)(b) of the Texas Rules of Civil Procedure. *See also Plodzik v. Owens-Corning Fiberglas Corporation,* 549 S.W.2d 52, 54 (Tex.Civ. App.—Waco 1977, no writ) (whenever action, such as striking pleadings, is to be taken by trial court, "it is essential to the proper administration of justice that proper notice shall be given of steps proposed to be taken".) Before sanctions for failure to make discovery may be imposed, a hearing must be held. *McInnis v. Yamaha Motor Corp., U.S.A.,* 659 S.W.2d 704, 714 (Tex. App.—Corpus Christi 1983), *aff'd,* 673 S.W.2d 185 (Tex.1984).

 The answers filed by Barry, Madison, and First Dallas contained both general denials of the plaintiffs' allegations and affirmative defenses of release. The question is whether the trial court could have properly entered a judgment against Barry, Madison, and First Dallas with their answers before the court as they should have been. Where the answers stand before the court with general denials, we are persuaded that, even though Barry and Madison were absent from the trial, the plaintiffs should be held to the same requirement to offer *proof of liability* since liability was not admitted because of failure to file answers. "If defendant has filed an answer placing in issue the merits of plaintiff's cause of action, defendant's failure to appear at trial is neither an abandonment of defendant's answer nor is it an implied confession of any issues thus joined by the defendant's answer." *Frymire Engineering Company, Inc. v. Grantham,* 524 S.W.2d 680, 681 (Tex.1975).

While the judgment of the trial court is a "default judgment," we must support that judgment if it can be sustained "on any reasonable theory supported by the evidence and authorized by law." *Betancourt v. Whittle,* 659 S.W.2d 895, 897 (Tex. App.—San Antonio 1983, no writ). An examination of the record reveals that no findings of fact or conclusions of law were made by the court. Therefore, we must look to the evidence itself to determine if it will support any theory that will validate the judgment. *Betancourt,* 659 S.W.2d at 897. *See also Bishop v. Bishop,* 359 S.W.2d 869, 871 (Tex.1962). The statement of facts reveals that the plaintiffs did indeed offer some proof of liability as well as proof of the unliquidated damages, which would dispose of the matter if liability based on fraud is established. Since we have determined that liability was not established by the failure of Barry, Madison, and First Dallas to appear for trial, we reach their points of error concerning no evidence and sufficiency of evidence.

 In their seventh point of error, Barry, Madison, and First Dallas claim that the trial court erred in entering judgment against them because there was no evidence, or in the alternative, insufficient evidence that Barry, or Madison, or any agent, servant or employee of First Dallas made any representations or misrepresentations to Scott. We hold that there is some evidence on liability of fraud in the testimony of Scott; therefore, we must now examine the sufficiency of the evidence as to whether there were representations made *by Barry, Madison,* or *First Dallas Petroleum.* We hold that the evidence is insufficient to prove that Barry, Madison, or any agent, servant or employee of First Dallas made representations to Scott concerning the transaction in question. "A person cannot be held liable for a fraudulent representation unless he made it himself or authorized another to make it for him or in some way participated therein ..." *Ross v. Seip,* 154 S.W.2d 958, 961 (Tex.Civ.App.—Texarkana 1941, writ ref'd

w.o.m.). The following testimony by Scott is the only evidence in the record which could possibly prove that Barry, Madison, or First Dallas made representations, or false representations, to Scott:

Q: And on or about 10 21 '82 did you have a transaction with Charles Madison, Robert Barry, ... and First Dallas Petroleum, Inc.?

A: Yes, sir.

. . . . .

Q: And, Mr. Scott, you made the payments to First Dallas Petroleum based on representations; is that right?

A: Yes, sir.

Q: And what were these representations?

A: That *they* would—this is a working interest in a well that they were to drill in I believe Comanche County.

Q: All right. Continue.

A: That it would be, constitute a working interest in it.

. . . . .

Q: And did *these people* make other representations to you as to production?

A: Yes, sir.

(Emphasis added.) A careful examination of the above testimony reveals that it does not clearly relate that Barry, Madison, or First Dallas Petroleum made the representations in question. It does not lay a proper predicate for proving what relationship, if any, Barry and Madison had with each other, or with First Dallas Petroleum. It does not prove which person made what representation, or even when the representations were made. We hold that the evidence is insufficient to prove that Barry, Madison, and First Dallas made representations to Scott.

In their eleventh and fifteenth points of error, Barry, Madison, and First Dallas claim that there is no evidence, or in the alternative, insufficient evidence, that they made representations, or false representations, to Hawkins, Jr., and Hawkins, Sr. Since the record is clear that all of Hawkins, Sr.'s, dealings with First Dallas Petroleum were through his son, Hawkins, Jr., we need only examine the evidence con-cerning representations made to Hawkins, Jr. We hold that there is some evidence of liability based on fraud, but we must now examine that evidence for sufficiency. Hawkins, Jr., testified, like Scott, that on October 21, 1982, he had entered into a transaction with Charles Madison, Robert Barry, and First Dallas Petroleum. His testimony concerning the representations was as follows:

Q: And what was the amount that was represented that you will receive from this investment?

A: This involves two different packages; but the totals would probably be somewhere around 2 hundred and 25, 2 hundred and 30 thousand dollars.

. . . . .

Q: Did these representations involve the Langford well?

A: Yes.

Q: And *they* provided you certain information?

A: Yes.

Q: And certain parts of the literature was untrue; is that right?

A: Absolutely.

(Emphasis added.) Hawkins' testimony continues, telling us that the representations were false; however, like Scott, he never identified who made the representations to him, how it was determined that the representations were false, or that whoever made the representation knew they were false. Hawkins later testified that he asked for his money back, but that "they" would not give it to him. He said that a few weeks later he was given three or four thousand dollars back in exchange for his signing a release of Barry, Madison, and First Dallas Petroleum. However, this is not sufficient evidence to prove that Barry, Madison, or First Dallas actually made the representations in question. *Ross*, 154 S.W.2d at 961.

■ Since Hawkins and Scott failed to establish who made what representations to them, they have failed to establish one of the essentials in an action for fraud. To establish fraud, one must prove that (1) the charged party made a false material repre-

sentation; (2) the charged party knew that the material representation was false or made it recklessly without any knowledge of its truth; (3) that the charged party made the false material representation with intent that it should be acted upon by the charging party; (4) that the charging party acted in reliance thereon; and (5) that the charging party thereby suffered an injury. *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1171–72, *rehearing denied* 689 F.2d 190, *vacated on other grounds*, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476, *cert. denied Bintliff v. Chemetron Corp.*, 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483, *on remand*, 718 F.2d 725 (5th Cir.1983); *see also Khalaf v. United Business Investments, Inc.*, 615 S.W.2d 869, 871 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Our examination of the statement of facts in the instant case convinces us that the evidence does not support the trial court's conclusion that the *charged parties* in this case made the representations in question. Therefore, we hold that the evidence was insufficient to prove all of the essential elements of fraud.

Furthermore, the judgment of September 23, 1985, does not indicate that the trial judge considered that evidence sufficient. The judgment is labeled a "default judgment" and states that the defendants failed "to properly answer [that] cause of action and [were] wholly in default." This recitation in the "default judgment" presumably reflects that *liability* was established by reason of the failure to file answers by the defendants rather than as a result of the sufficiency of the proof offered by the plaintiffs at trial. Since we hold that the striking of the answers of Barry, Madison, and First Dallas was an abuse of discretion because it disregarded a rule of civil procedure, the result obtained from such error was an incorrect predicate for the trial court to find that liability was admitted.

Since we are persuaded that the proceedings in the trial court reached an incorrect result because of an abuse of discretion, the fifth, seventh, eleventh, and fifteenth points of error assigned by Barry, Madison, and First Dallas are sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.