**Lawrence E. MOFFITT, Appellant,**

v.

**DSC FINANCE CORPORATION, Appellee.**

**No. 05–90–00066–CV.**

Court of Appeals of Texas, Dallas.

April 27, 1990.

Rehearing Denied June 13, 1990.

Reversed Oct. 24, 1990.

---

Dennis P. Swartz, McKinney, for appellant.

John P. Lewin, Rebecca E. Hamilton, Dallas, for appellee.

Before McCLUNG, KINKEADE and OVARD, JJ.

## OPINION

McCLUNG, Justice.

This is an appeal by petition for writ of error under Texas Rule of Appellate Procedure 45. Asserting three points of error, appellant Lawrence Moffitt (Moffitt) seeks reversal of a post-answer default judgment. By cross-point, appellee DSC Finance Corporation (DSC) requests that we dismiss this appeal for want of jurisdiction. We reverse and remand.

DSC leased telecommunications equipment to Sun–Net, Inc. (Sun–Net). The lease obligated Sun–Net to make 60 monthly payments of $15,272.00. Moffitt guaranteed a specified portion of the outstanding balance due under the lease. Sun–Net defaulted after making two payments, and DSC brought suit against Sun–Net and Moffitt. Both Sun–Net and Moffitt answered, and Moffitt asserted a counterclaim for usury. The trial court granted DSC an interlocutory summary judgment against Sun–Net, awarding DSC $901,048.00 as the outstanding balance due under the lease. When the remaining claims came to trial, neither Moffitt nor his attorney appeared. Although informed that Moffitt's attorney was ill, the trial court heard DSC's evidence, rendered judgment awarding DSC $575,786.00 on the guaranty, and dismissed Moffitt's usury claim with prejudice. Moffitt appeals this judgment by petition for writ of error.

■ The four elements necessary for review by writ of error are: (1) the petition must be brought within six months of the date of judgment; (2) by a party to the suit; (3) who did not participate at trial; and (4) error must be apparent on the face of the record. *Stubbs v. Stubbs*, 685 S.W.2d 643, 644 (Tex.1985). The record in this case reflects that the second and third

requirements have been met. The controversy concerns the first and fourth.

## I. TIMELINESS OF THE PETITION

■ By cross point, DSC asks us to dismiss this appeal on the ground that Moffitt's petition for writ of error is untimely. The trial court signed the final judgment in this cause on June 21, 1989. Therefore, Moffitt was required to file his petition for writ of error with the trial court by December 21, 1989. TEX.R.APP.P. 45(a). Moffitt deposited his petition for writ of error in the United States mail on December 20, 1989. Under Texas Rule of Appellate Procedure 4(b), this mailing constitutes a timely filing so long as the trial court clerk received the petition within ten days of the due date. TEX.R.APP.P. 4(b). DSC contends that we must dismiss this appeal because the record does not show that Moffitt's petition reached the trial court clerk within ten days of the due date. DSC is mistaken. By order of March 2, 1990, this Court allowed Moffitt to file a supplemental transcript containing Moffitt's petition for writ of error. This supplemental transcript shows that the petition for writ of error was filed in the trial court clerk's office December 27, 1989. DSC's cross point is overruled.

## II. ERROR ON THE FACE OF THE RECORD

Moffitt's points of error concern the fourth requirement for a successful appeal by petition for writ of error: the existence of error on the face of the record. In determining whether an appellant has shown error on the face of the record, this court may consider all of the papers on file in the appeal including the statement of facts. *First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 643 (Tex.App.—Dallas 1987, no writ). Review by writ of error affords the same scope of review as an appeal. *Hawkins*, 727 S.W.2d at 643.

Moffitt asserts three points of error. He contends that the trial court erred: (1) in entering judgment of $575,786.00 on the guaranty agreement when his maximum liability was $281,068.00; (2) in dismissing his counterclaim for usury; and (3) in failing to grant him a continuance. For ease of analysis, we will address Moffitt's points of error in reverse order.

■ In his third point of error, Moffitt contends that the trial court abused its discretion in denying him a continuance of the trial on the merits. This case was set for trial on the afternoon of June 21, 1989. That morning Moffitt filed an unverified motion for continuance which stated that his attorney was ill and could not leave his residence to appear for trial. DSC's counsel appeared for trial, but neither Moffitt nor his counsel appeared. Although DSC's counsel informed the trial court that she understood that Moffitt's attorney was ill, the record contains no indication that Moffitt's motion for continuance was ever presented to the trial court. After waiting approximately one hour, the court directed DSC to proceed with its proof.

■ The granting or denial of a motion for continuance is within the trial court's sound discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). Rule 251 of the Texas Rules of Civil Procedure requires a movant to support a motion for continuance by affidavit. TEX.R.CIV.P. 251. Failure to comply with this requirement creates a rebuttable presumption that the trial court did not abuse its discretion in denying a motion for continuance. *Thrower v. Johnston*, 775 S.W.2d 718, 720-21 (Tex. App.—Dallas 1989, no writ); see also *Villegas*, 711 S.W.2d at 626.

Moffitt's motion was not supported by affidavit as required by Rule 251, and it contained no information concerning his counsel's illness beyond the simple statement that counsel was ill and unable to leave his residence. Beyond filing this motion, neither Moffitt nor his attorney took any steps to inform the trial court of Moffitt's situation and secure a continuance. At the hearing on Moffitt's motion for new trial, the trial court found that Moffitt's attorney's illness was not physically incapacitating, that he was not treated by a physician, and that he could have appeared for trial. The facts of this case do not show that the trial court abused its discre-

tion in failing to continue the trial on the merits. Moffitt's third point of error is overruled.

■ In his second point of error, Moffitt asserts that the trial court erred in failing to award him judgment on his usury counterclaim. Moffitt argues that under the law of usury and the facts of this case, he was entitled to judgment on his claim. Moffitt's argument ignores the fact that he failed to appear for trial or to present evidence in support of his claim at trial.

■ Rule 165a of the Texas Rules of Civil Procedure expressly authorizes the trial court to dismiss a case for want of prosecution on the failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice. TEX.R.CIV.P. 165a(1). Absent a showing of abuse of discretion, courts have upheld the dismissal of a defendant's cross claim when that defendant failed to appear for a hearing of which he had notice. *Maldonado v. Puente*, 694 S.W.2d 86, 91–92 (Tex.App.—San Antonio 1985, no writ) (upholding under Rule 165a dismissal of defendant's cross action when defendant failed to appear for jury selection proceedings); *Murphy v. Stigall*, 352 S.W.2d 918, 918–19 (Tex.Civ.App.—San Antonio 1961, writ ref'd). Moffitt has failed to show that the trial court abused its discretion in dismissing his counterclaim. We overrule Moffitt's second point of error.[1]

In his first point of error, Moffitt asserts that the trial court erred in entering judgment on the guaranty in the amount of $575,786.00. Moffitt contends that the trial court incorrectly interpreted the guaranty agreement and that, under a proper interpretation, his liability was limited to $281,068.00. DSC suggests, in a footnote in its brief, that we may not consider Moffitt's point because he has failed to preserve error as required by Texas Rule of Appellate Procedure 52(a). DSC also argues that it properly established Moffitt's

liability in the amount of $575,786.00 under the guaranty.

■ We address first whether Texas Rule of Appellate Procedure 52(a) precludes consideration of Moffitt's point of error. That rule provides, in pertinent part:

> In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling on the party's request, objection, or motion.

TEX.R.APP.P. 52(a).

In *First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 645–47 (Tex.App.—Dallas 1987, no writ), this Court addressed the application to an appeal by writ of error of the general rule requiring an appellant to preserve error. Noting that an appeal by writ of error is open only to a party who has not participated at trial, this Court held that an appellant who necessarily had no opportunity to object at trial was not required to do so in order to preserve error for review. *Hawkins*, 727 S.W.2d at 646. Nor was an appellant required to preserve the error by including his complaint in a motion for new trial. *Hawkins*, 727 S.W.2d at 646–47. The Court reasoned:

> The argument that an appellate court on an appeal by writ of error may only review error objected to in the trial court would destroy a remedy designed to protect defendants who have been wronged in proceedings where for reasons beyond the scope of the trial they were not present. Furthermore, it would vitiate the remedy of review by writ of error.

*Hawkins*, 727 S.W.2d at 646.

As DSC observes, this court based its holding in *Hawkins*, in part, on former Rule 373 of the Texas Rules of Civil Proce-

---

1. In this case, the trial court dismissed Moffitt's counterclaim with prejudice. Because a dismissal for want of prosecution is not a trial on the merits, dismissal with prejudice is improper. *Maldonado*, 694 S.W.2d at 92; *Murphy*, 352 S.W.2d at 919. Moffitt does not raise this issue, however, and therefore we do not address it. *See Prudential Insurance Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex.1986) (appellate court may not review unassigned error).

dure. Former Rule 373 expressly provided that the absence of an objection did not prejudice an appellant who had no opportunity to object at the time that the ruling was made. Former Rule 373 has been succeeded by Texas Rule of Appellate Procedure Rule 52, which contains no such express provision, and in *Hawkins,* this Court explicitly declined to address whether it would reach the same result under Rule 52.

■ Nevertheless, we do not believe that by its promulgation of Rule 52 the Texas Supreme Court intended to require an appellant to object when he had no opportunity to do so. The reasoning expressed in *Hawkins* remains valid. *See Allied Bank of Dallas v. Pleasant Homes, Inc.,* 757 S.W.2d 460, 463 (Tex.App.—Dallas 1988) (applying the reasoning of *Hawkins* without discussion of the change in Rule 52), *writ denied,* 776 S.W.2d 153 (Tex.1988). The rules of appellate procedure should be liberally construed in favor of the right to appeal. *See Jones v. Stayman,* 747 S.W.2d 369, 370 (Tex.1987). We decline to construe Rule 52 so narrowly as to "vitiate the remedy of review by writ of error."

■ This case involves a post-answer default judgment against Moffitt. Because Moffitt had filed an answer, DSC was required to prove Moffitt's liability under the guaranty as well as DSC's damages. Moffitt's failure to appear at trial was neither an abandonment of his answer nor a confession of liability. *Hawkins,* 727 S.W.2d at 648. Thus, the trial court was necessarily required to consider the guaranty and its interpretation in granting judgment for DSC. In his answer, Moffitt expressly stated that his maximum liability under the guaranty was $281,068.00. Further, at trial, DSC's attorney summarized, albeit briefly, the parties' conflicting interpretations of the guaranty and identified this issue as "the question before the Court now." For these reasons, we conclude that Rule 52 does not preclude review by writ of error of the issue which Moffitt raises concerning the interpretation of the guaranty. *Cf. Roberts v. State,* 749 S.W.2d 624 (Tex. App.—Fort Worth 1988, no pet.) (appel-

lant's argument during hearing sufficient to apprise trial court of issue for purposes of Rule 52).

■ As was previously stated, DSC leased telecommunications equipment to Sun–Net. The lease required Sun–Net to make monthly payments of $15,272.00 for a term of five years, and Sun–Net defaulted after making two monthly payments. Moffitt partially guaranteed Sun–Net's performance. Moffitt's guaranty provided in pertinent part:

(1) [Moffitt] hereby guarantees seventy-five percent (75%) of the outstanding balance and accrued interest thereof on the Lease, less one hundred thousand dollars ($100,000.00) during the first twelve (12) months of the Lease, then fifty percent (50%) of the outstanding principle balance and accrued interest thereof on the Lease, less one hundred thousand dollars ($100,000.00) during the remaining forty-eight (48) months of the Lease.

DSC interprets this provision as a guaranty of seventy-five percent of the unpaid monthly rentals *over the entire remaining term of the lease* (less one hundred thousand dollars) if Sun–Net defaults during the first year of the lease. According to DSC's interpretation, the provision guarantying fifty percent of the outstanding balance is effective only if Sun–Net's default occurs after the first year of the lease. Thus, DSC contends, because Sun–Net defaulted during the first year of the lease, DSC was entitled to $575,786.00, an amount which is seventy-five percent of the entire outstanding balance adjudicated against Sun–Net less one hundred thousand dollars. In contrast, Moffitt contends that, *regardless of when the default occurred,* under this provision he guaranteed only seventy-five percent of the unpaid monthly rentals *for the first year of the lease* (less one hundred thousand dollars) plus fifty percent of the unpaid rentals due for the second through fifth years of the lease (also less one hundred thousand dollars). This interpretation, Moffitt asserts, results in a maximum liability of $281,068.00. The trial court accepted DSC's in-

terpretation and awarded judgment against Moffitt in the amount of $575,786.00.

■ The rules governing interpretation of a guaranty agreement make a guarantor a favorite of the law. Where uncertainty exists about the meaning of a guaranty agreement, and two reasonable constructions may be made, the reviewing court will apply the construction more favorable to the guarantor. The guarantor's obligation should not be extended by obligation beyond the written terms of the agreement. *Western Bank–Downtown v. Carline*, 757 S.W.2d 111, 114 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Thompson v. Preston State Bank*, 575 S.W.2d 312, 315 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r. e.); *Southwest Savings Association v. Dunagan*, 392 S.W.2d 761, 766 (Tex.Civ.App. —Dallas 1965, writ ref'd n.r.e.).

In this case, the guaranty is reasonably susceptible to the constructions advanced by both parties. Consequently, in light of the rules governing construction of guaranty agreements, we construe the guaranty to require Moffitt to pay seventy-five percent of the unpaid rentals due for the first year of the lease and fifty percent of the rentals due for the remaining years of the lease. Moffitt's first point of error is sustained.

The trial court's judgment awarding DSC judgment on the guaranty in the amount of $575,786.00 is reversed and this cause is remanded to the trial court for further proceedings on DSC's claims against Moffitt on the guaranty.[2] In all other aspects, the trial court's judgment is affirmed.

---

**2.** Moffitt asserts in his brief that his construction of the guaranty results in a maximum liability of $281,068.00. At trial, however, DSC introduced no evidence concerning the amount of its damages other than evidence and argument regarding the interpretation of the contract and regarding attorneys' fees. The trial court apparently arrived at the amount of its judgment by applying DSC's interpretation of the guaranty to the amount of Sun–Net's outstanding balance as adjudicated in its earlier summary judgment. Because the evidence necessary to determine DSC's damages under Moffitt's interpretation of the guaranty was not introduced at trial, we cannot render judgment for that amount. Therefore, we remand this case for retrial of DSC's claims on the guaranty. *See* Tex.R.App.P. 81(b), 81(c).