**Reversed and Remanded and Opinion Filed August 6, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00126-CV**

## IN THE INTEREST OF Z.A., A CHILD

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-20-0213**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Partida-Kipness

Alleged father E.S.S. appeals the termination of his parental rights following a bench trial. In two issues, E.S.S. contends the trial court erred in denying his motion for continuance and terminating his parental rights without sufficient evidence to prove that he committed alleged acts or omissions. We sustain E.S.S.'s issues, reverse the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Z.A. is a male born on June 21, 2019. R.A. is his mother, and E.S.S. is his alleged father. The Texas Department of Family and Protective Services (the Department) received and investigated multiple reports of R.A.'s neglectful

supervision and physical abuse of Z.A. After the third report, the Department investigator met with R.A. to discuss family members with whom Z.A. could be placed. R.A. identified E.S.S. as Z.A.'s father. She claimed that E.S.S. had not had anything to do with her since she told him that she was pregnant. She said he had never seen Z.A. and thought E.S.S. was in prison. E.S.S. was, in fact, in prison and had been there since Z.A. was born.

The Department removed Z.A. from R.A.'s custody. On February 10, 2020, the Department filed a petition for Z.A.'s protection and for termination of R.A.'s and E.S.S.'s parental rights. The Department's petition also sought a determination of parentage as to E.S.S. Alternatively, if E.S.S. appeared in the case and was adjudicated as Z.A.'s father, but reunification could not be achieved, the Department sought termination of his parental rights on multiple statutory grounds. E.S.S. was still in prison when the Department filed its petition. Although he did not file a formal answer, he did file a pro se letter on February 21, 2020, in which he stated that he was Z.A.'s biological father. His letter also indicated his desire to retain his parental rights "to raise my son."

The trial court held an adversary hearing on February 24, 2020. E.S.S. appeared at the hearing by teleconference. After the hearing, the trial court issued a temporary order in which it found sufficient evidence of a danger to Z.A.'s physical health and safety to justify Z.A.'s removal. The trial court also ordered E.S.S. to submit to genetic testing with arrangements for testing to be made by the

Department. The Department scheduled genetic testing for E.S.S. on August 10, 2020, in Greenville, Texas. E.S.S. was out of prison at that time and residing in the Dallas Transitional Center in Hutchins, Texas. He did not appear for the appointment. The Department rescheduled testing for September 24, 2020. E.S.S. missed that appointment as well. But the record contains conflicting evidence as to whether the Department successfully notified E.S.S. of this appointment. E.S.S. was arrested on October 29, 2020, and placed in Grayson County Jail. The Department attempted to schedule a third appointment through the Grayson County Jail. No appointment was made, however, and the record does not reflect why.

The trial court held a permanency hearing on November 30, 2020, and issued a permanency order on December 1, 2020. E.S.S. appeared at the hearing through court-appointed counsel. In the order, the trial court found, among other things, that E.S.S. had not complied with the court's order to submit to genetic testing to determine parentage. The trial court also reaffirmed that the case was set for final hearing on February 15, 2021, the same date the trial court set for dismissal according to section 263.306(a-1)(7) of the family code. *See* TEX. FAM. CODE § 263.306(a-1)(7) (requiring a trial court to estimate at each permanency hearing before rendering a final order "a likely date by which the child may be returned to and safely maintained in the child's home, placed for adoption, or placed in permanent managing conservatorship").

–3–

E.S.S. filed a motion for continuance and demand for jury trial on February 3, 2021. He demanded a jury trial under section 105.002 of the family code. *See id*. § 105.002 (permitting a jury demand except for suits in which adoption is sought or to adjudicate parentage under chapter 160). His motion for continuance asserted, however, that a jury trial could not be safely held because of the ongoing COVID-19 pandemic. Thus, he sought a continuance under the Texas Supreme Court's Thirty-Third Emergency Order Regarding COVID-19. The Department moved to strike E.S.S.'s jury demand as untimely and asked the trial court to deny E.S.S.'s motion for continuance because he had cited no reason other than the COVID-19 order to continue the final hearing setting. E.S.S. responded that his jury demand was not untimely because there is no statutory deadline for such a demand. Regarding grounds for a continuance, he noted evidence that the Department had attempted to schedule genetic testing at the Grayson County Jail by the end of January 2021, but no testing had been scheduled.

The trial court heard E.S.S.'s motion on February 8, 2021. At the hearing, the court struck the jury demand as untimely, concluded that E.S.S.'s motion for continuance was based solely on his jury demand, and denied the continuance. Finding there was not sufficient time to hold another hearing before the February 15, 2021 final hearing deadline, and E.S.S. had not identified any other extraordinary circumstances to justify a continuance, the trial court conducted the final permanency hearing. The court received testimony from the Department's

–4–

caseworker, the CASA advocate assigned to the case, and E.S.S. At the close of testimony, E.S.S. asked the trial court to order genetic testing again before entering a termination order. The trial court found there was no credible evidence that E.S.S. "made any efforts" to inform the Department that he was unable to appear for the two testing appointments he missed; E.S.S. did not register with the paternity registry or file a timely admission of paternity; it was not in Z.A.'s best interest to delay permanency; and it was in Z.A.'s best interest to terminate any parental rights E.S.S. may have. The trial court issued an order terminating "the parent-child relationship, if any exists or could exist," between E.S.S. and Z.A. This appeal followed.

## ANALYSIS

In two issues, E.S.S. contends (1) the trial court should have granted his motion for continuance based on extraordinary circumstances, and (2) there was not clear and convincing evidence that he committed any of the alleged grounds for termination. We address the issues in order.

## I.     Motion for Continuance

In his first issue, E.S.S. contends the trial court abused its discretion in denying his motion for a continuance. On appeal, E.S.S. cites the Department's pending genetic testing request as an extraordinary circumstance justifying a continuance. The Department contends E.S.S. did not cite this reason in his motion but based his motion solely on the alleged inability to hold a jury trial due to the

COVID-19 pandemic. Because E.S.S.'s jury demand was untimely, the Department contends the trial court properly denied his motion for a continuance.

We review the denial of a motion for continuance for an abuse of discretion. *Wal–Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied). The denial will be reversed only if the trial court's action was arbitrary, unreasonable, or without reference to any guiding rules and principles. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 858 (Tex. App.—Dallas 2008, no pet.). A party moving for continuance must show sufficient cause supported by affidavit, consent of the parties, or by operation of law. TEX. R. CIV. P. 251. Failure to comply with this requirement creates a rebuttable presumption that the trial court did not abuse its discretion in denying a motion for continuance. *Moffitt v. DSC Fin. Corp.*, 797 S.W.2d 661, 663 (Tex. App.—Dallas 1990, writ denied). Whether a continuance should be granted is to be judged in light of facts before the trial judge at the time the motion is presented. *Aguilar v. LVDVD, L.C.*, No. 08-01-00438-CV, 2002 WL 1732520, at *3 (Tex. App.—El Paso July 25, 2002, pet. denied) (not designated for publication) (citing *Gulf Ins. Co. v. Dunlop Tire and Rubber Corp.*, 584 S.W.2d 886, 889 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.)).

E.S.S.'s motion was not supported by an affidavit as required by rule 251.[1] Accordingly, there is a rebuttable presumption that the trial court did not abuse its

---

[1] The motion also stated a basis for granting the continuance by operation of law: the supreme court's emergency COVID-19 order and his associated jury demand. On appeal, E.S.S. does not contest the trial

discretion in denying the motion. *See Moffitt*, 797 S.W.2d at 663. Evidence presented at the final hearing and in E.S.S.'s written reply in support of his motion was sufficient to rebut this presumption. *See Thrower v. Johnston*, 775 S.W.2d 718, 721 (Tex. App.—Dallas 1989, no writ) (evidence supporting movant's request for continuance rebutted presumption the trial court did not abuse its discretion in denying unverified motion for continuance).

The trial court determined that E.S.S.'s motion was based solely on E.S.S.'s jury demand. Because the court had denied the jury demand as untimely, it also denied the motion. The need for genetic testing, however, was presented as a ground for continuance in the final hearing. Indeed, E.S.S.'s inability to appear for two genetic testing appointments and the parties' desire to schedule a third appointment was the primary focus of the hearing.

E.S.S. testified that he moved into the Dallas Transitional Center in Hutchins, Texas, upon release from prison. Shortly after arriving in Hutchins, he spoke with the caseworker about genetic testing and indicated that he wanted to delay testing because he was planning to move to Sherman, Texas, after his home plan was approved. The caseworker testified, however, that there is no testing center in Sherman, and the record does not reflect that she conveyed this information to E.S.S. Regardless, after E.S.S. twice indicated his desire to schedule testing after he moved

---

court's denial of his motion on this ground. Accordingly, he has waived any complaint as to the trial court's denial of his motion on this ground. TEX. R. APP. P. 38.1(f).

to Sherman, the caseworker scheduled testing in Greenville while E.S.S. was still living in Hutchins. It is unclear from the record whether E.S.S. knew of the appointment because the caseworker was unable to reach him. Although the caseworker informed E.S.S.'s attorney, there is no evidence that E.S.S. received any information about the initial appointment.

E.S.S. and the caseworker reconnected after he missed the first appointment. E.S.S. told the caseworker that he wanted to reschedule, and the caseworker contacted the Attorney General's office to schedule a new appointment. The AG's office scheduled a new appointment for September 29, 2021, and notified the caseworker on September 17, 2021. She notified E.S.S. the same day. E.S.S. was living in Denison at the time. The record does not reflect the location of the second appointment, but E.S.S. did not appear.

E.S.S. testified that he was unable to make the appointments because he did not have transportation. According to E.S.S., he did not have a driver's license or vehicle, and did not have transportation to get to the testing location for either appointment. He claimed that he was walking to work while living in Denison and specifically told the caseworker that he was having trouble arranging transportation for the testing appointments. According to E.S.S., the caseworker asked whether E.S.S.'s mother could take him. He said that she could not because she was undergoing chemotherapy treatment at the time. The caseworker testified, however, that she never asked E.S.S. whether he could obtain a ride, she did not know whether

–8–

E.S.S. had transportation, and she could not recall whether E.S.S. indicated he could obtain a ride. When asked whether it would have been difficult for E.S.S. to have gone to Greenville for testing, the caseworker offered only, "I think that he could of [sic] found a ride."

The caseworker testified that the Department attempted to schedule a third testing appointment at the Grayson County Jail in the hopes of having E.S.S. tested by the end of January 2021. The test was not scheduled, and the record does not reflect why. E.S.S. noted this fact in his written reply filed before the hearing. At the conclusion of testimony, E.S.S.'s counsel asked the court to order genetic testing before entering a termination order. According to the Department, E.S.S. missed the two genetic testing appointments because it was not "important enough for him to go to those visits." The trial court concluded there was no credible evidence that E.S.S. made any effort to inform anyone that he was unable to appear for the two missed testing appointments. We disagree.

Evidence presented at the hearing indicated that E.S.S. was indigent and without transportation. Further, he was operating under the faulty assumption that testing would be scheduled in Sherman when he moved there. There was no testing facility in Sherman, however, and the caseworker did not inform him of this fact. And, as of the hearing date, E.S.S. was incarcerated in the Grayson County Jail. Although there is evidence the Department made some attempt to schedule a third appointment at the jail, there is no evidence as to why that did not happen. His

attendance at a third appointment would have essentially been assured had it been scheduled to take place at the Grayson County Jail. When E.S.S. presented his motion, he asked the trial court to schedule the genetic testing before terminating his parental rights. In light of the facts before the trial court at the time E.S.S.'s motion was presented, we conclude the trial court abused its discretion in denying the motion. *See Aguilar*, 2002 WL 1732520, at \*3.

## II. Involuntary Termination

In his second issue, E.S.S. contends the trial court erred in terminating his parental rights because the Department failed to prove by clear and convincing evidence that he committed any of the acts or omissions alleged in the Department's petition.

The involuntary termination of parental rights involves fundamental constitutional rights. *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). A natural parent's desire for—and right to—the companionship, care, custody, and management of his or her child is an interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). A termination order is final and irrevocable, divesting for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003) (referring to termination of a parent's right to his or her child as "traumatic, permanent, and irrevocable").

Both the Texas Family Code and federal due process require that grounds for termination of parental rights be proved by clear and convincing evidence. TEX. FAM. CODE § 161.001; *Santosky*, 455 U.S. at 769. A trial court may order termination of a parent's rights to a child under section 161.001 if the court finds by clear and convincing evidence that termination is in the child's best interest and that one or more of the statutory predicate grounds for termination have been satisfied. *In re Z.N.*, 602 S.W.3d 541, 543 (Tex. 2020) (per curiam); TEX. FAM. CODE § 161.001(b). Yet, a trial court may terminate a parent's rights without a best interest finding for failure to file a timely admission of paternity under 161.002(b)(1). *Compare* TEX. FAM. CODE § 161.001(b)(2) with § 161.002(b)(1); *see also R.H. v. Tex. Dep't of Family & Protective Services*, 550 S.W.3d 631, 640 (Tex. App.—El Paso 2013, no pet.) (overruling alleged father's complaint "Department failed to prove by clear and convincing evidence that termination of his parental rights was in the best interest of the children," when rights terminated under section 161.002(b)(1), because no best-interest finding required).

The Department sought termination of E.S.S.'s parental rights on two alternative grounds. First, the Department sought termination of E.S.S.'s parental rights as an alleged father on grounds outlined in section 161.002 of the family code. *See* TEX. FAM. CODE § 161.002(b) (permitting termination of alleged father's rights for failing to file a timely admission of paternity or register with the paternity registry). Alternatively, if E.S.S. was established as the father, the Department

sought termination based on acts or omissions alleged under section 161.001 of the family code. *See* TEX. FAM. CODE § 161.001 (listing acts and omissions that may serve as grounds for termination of parental rights). The trial court did not adjudicate E.S.S. as Z.A.'s father and did not find that he committed any of the acts or omissions alleged under section 161.001. Indeed, the record does not reflect that the Department offered any evidence of such acts or omissions. Thus, the Department relied solely on its first ground for termination.

According to the Department's petition, the trial court could terminate E.S.S.'s parental rights as an alleged father if he did not respond to the petition by filing a timely admission of paternity or failed to register with the paternity registry.[2] *See* TEX. FAM. CODE § 161.002(b)(1), (3). In the final hearing, the Department argued that section 160.404 of the family code permits rights of "the unknown father in this case" to be terminated "because no one has registered as [Z.A.'s] father with the paternity registry."[3] This is incorrect. Section 160.404 pertains only to the termination of an *alleged* father's parental rights when he did not timely register. TEX. FAM. CODE § 160.404(1). An alleged father who has filed a timely admission of paternity, however, may not have his parental rights summarily terminated solely

---

[2] The Department's petition also sought to terminate E.S.S.'s parental rights under section 161.002(b)(4). The Department, however, did not pursue this ground for termination, and it is not addressed in the trial court's termination order.

[3] The record reflects that the Department argued section "168.404" permitted termination of an unknown father's rights because no one had registered with the paternity registry. There is no such section in the family code. Section 160.404 concerns termination of parental rights for failure to register with the paternity registry. Thus, we assume the Department intended to refer to this section.

for failing to register with the paternity registry. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.). The evidence indicates that E.S.S. filed a timely admission.

"A respondent in a proceeding to adjudicate parentage may admit to the paternity of a child by filing a pleading to that effect or by admitting paternity under penalty of perjury when making an appearance or during a hearing." TEX. FAM. CODE § 160.623(a). "There is no provision in the Texas Family Code that specifies any particular form or language required for an admission of paternity." *Estes v. Dallas Cty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 773 S.W.2d 800, 801 (Tex. App.—Dallas 1989, writ denied). The threshold for qualifying a statement as an admission of paternity is exceedingly low. Merely being described as a parent to the child at issue is sufficient. *See id*. at 802 (respondent describing "himself as an indigent parent" was sufficient to qualify as an admission of paternity); *see also In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *2 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (alleged father's letter to trial court clerk asserting he was father of child at issue constituted an admission of paternity); *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (alleged father's letter to court referring to children at issue as "my children" constituted an admission of paternity); *Toliver v. Tex. Dep't of Family & Prot. Svcs.*, 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (respondent's appearance at trial, assertion of paternity, and request that parental

–13–

rights not be terminated constituted an admission of paternity). To be timely, an admission need only be "filed prior to the final hearing in the suit for termination." *Estes*, 773 S.W.2d at 802; *see also Toliver*, 217 S.W.3d at 105 (admission of paternity made at trial was timely).

Once a court finds that an admission of paternity satisfies the statutory requirements for such an admission, "and that there is no reason to question the admission, the court *shall* render an order adjudicating the child to be the child of the man admitting paternity." TEX. FAM. CODE § 160.623(b) (emphasis added). Thus, an alleged father who admits paternity can "stave off summary termination of his rights [under section 161.002(b)(1)] and require[] the Department to meet the high burden of proof found in section 161.001." *Phillips*, 25 S.W.3d at 357. In other words, the admission gives him the right to proceed to trial and require the Department to prove by clear and convincing evidence that he engaged in one of the types of conduct listed in section 161.001 and that termination is in the best interest of his child. *Id*.

Here, the Department filed its petition on February 10, 2020. Approximately one week later, on February 18, 2020, E.S.S. drafted a letter to the district clerk in which he declared, "I am the biological father to [Z.A.]." E.S.S. also stated in the letter, "I would like to keep my rights to raise my son." The pro se letter was filed into the case on February 21, 2020, and the final hearing was held on February 8, 2021. The trial court declared both in open court and in its order of termination that,

"after being served with citation in this suit, [E.S.S.] did not respond by timely filing an admission of paternity . . . ." We conclude, however, that E.S.S.'s letter constituted a timely admission of paternity, and the trial court erred in finding otherwise and in not adjudicating E.S.S. as Z.A's father. *See Estes*, 773 S.W.2d at 802; TEX. FAM. CODE § 160.623(b).

To terminate an adjudicated parent's rights under section 161.001, the trial court must find both that termination is in the child's best interest and that one or more of the statutory predicate grounds for termination have been satisfied. *In re Z.N.*, 602 S.W.3d at 543. The Department alleged that E.S.S. had committed numerous acts and omissions under section 161.001. *See* TEX. FAM. CODE § 161.001(b)(1)(C), (D), (E), (H), (O), (Q). However, the Department did not offer any evidence that E.S.S. committed the acts or omissions alleged under section 161.001. On appeal, the Department cites only evidence purportedly showing that termination was in Z.A.'s best interest. This, however, is insufficient to terminate an adjudicated father's rights under section 161.001. *See In re Z.N.*, 602 S.W.3d at 543.

As previously discussed, the Department focused primarily on disproving E.S.S.'s paternity, rather than terminating his parental rights. "The paternity of a child having a presumed, acknowledged, or adjudicated father may be disproved only by admissible results of genetic testing excluding that man as the father of the child or identifying another man as the father of the child." TEX. FAM. CODE § 160.631(b). The trial court was required to adjudicate E.S.S. as Z.A.'s father in light

–15–

of his timely admission. *See* TEX. FAM. CODE § 160.623(b). Thus, to the extent the trial court concluded that E.S.S. was not Z.A.'s father—as reflected in its termination of "the parent-child relationship, if any exists or could exist"—such a conclusion was in error because the Department offered no genetic testing results to disprove E.S.S.'s paternity. We sustain E.S.S.'s second issue.

## CONCLUSION

E.S.S. moved for a continuance on the grounds that a jury trial could not be safely held before the dismissal deadline and that additional time was needed for genetic testing to determine paternity. Although his jury demand was untimely, the trial court abused its discretion by denying appellant's motion for continuance and failing to order genetic testing in the facility where appellant was incarcerated. E.S.S.'s letter filed with the clerk shortly after the Department filed its petition constituted an admission of paternity. Thus, the trial court erred in terminating his parental rights for failure to file a timely admission of paternity and in failing to adjudicate E.S.S. as Z.A.'s father on this basis. Having sustained both of E.S.S.'s issues on appeal, we reverse the trial court's order and remand the case for further proceedings consistent with this opinion.  Such proceedings on remand shall include the trial court ordering genetic testing of E.S.S. to be conducted at a time and place accessible to E.S.S.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210126F.P05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF Z.A., A CHILD

No. 05-21-00126-CV

On Appeal from the 59th Judicial District Court, Grayson County, Texas

Trial Court Cause No. FA-20-0213. Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion, which include ordering genetic testing of E.S.S. to be conducted at a time and place accessible to him.

Judgment entered August 6, 2021.